## JEFFREY v. THE K. & D. M. R. Co.

1. **Railroads:** PERSONAL INJURY: NEGLIGENCE. The plaintiff was employed by the defendant on a construction train, and in the discharge of his duty he walked to the rear of the train while in motion; when within five feet of the rear end of the last flat car in front of the caboose the latter was uncoupled by the conductor, who warned the plaintiff to stop, and at a signal the engineer increased the speed of the train with a sudden jerk, which threw the plaintiff from the car and he was run over and injured. In an action to recover damages for such injury it was held that a verdict for the plaintiff was supported by the evidence.

2. ——: ———: EVIDENCE. In such an action it is competent for the plaintiff to show that the uncoupling of the cars while in motion was unusual.

3. ——: ———: ———. It is not competent for a witness testifying in regard to the customary manner of operating trains to give an opinion as to the propriety or impropriety of a given method.

4. ——: ———: INSTRUCTIONS. The giving and refusal of instructions considered and held to be without error.

*Appeal from Lee Circuit Court.*

TUESDAY, OCTOBER 4.

THIS is an action at law to recover damages which it is alleged the plaintiff sustained while in the employment of the defendant by being run over by a car through the negligence of certain co-employes. The petition and answer were in the usual form, the plaintiff claiming that he was injured by reason of negligence in the persons having charge of said train, and averring due care on his part, and the defendant denying such negligence and pleading contributory negligence upon the part of the plaintiff. There was a trial by jury which resulted in a verdict and judgment for the plaintiff for $5,500. Defendant appeals.

*Gillmore & Anderson,* for appellant.

*Craig & Collier,* for appellee.

ROTHROCK, J.—I. The main facts attending the accident are not in dispute. They are as follows: The plaintiff entered the service of the defendant on the 10th day of July, 1876, as a shoveler on a construction train having its headquarters at Summit Station. On the 26th of August, 1876, this construction train was being employed in hauling dirt to certain places west of Summit Station, and as was its custom it was coming into the station to lay up for the night. The train consisted of an engine and tender, and a way car, and some ten or twelve flat cars. There were about forty laborers working on said train. There were two tool boxes, with a passage way between them, on or near the rear end of the last flat car, and next to the way car. The way car had a door in the end next to the car with the tool boxes. The train usually started from the dump about the time or before all the dirt was thrown from the cars, and as soon as the dirt was all removed the men walked along the train while it was in motion, deposited their tools in the tool boxes, and went into the way car to get their dinner buckets and any of their clothing which might be there, and then they usually returned to the front of the train, next the locomotive, so that they could get off opposite their boarding house. On the evening of the accident the plaintiff went back to the rear of the train for the purpose of getting his coat and dinner bucket. When he reached the rear of the last car, and was near the tool boxes, Mike O'Neil, the conductor of the train, was standing in the door of the caboose. The speed of the train had slackened somewhat, and O'Neil stopped one Caffey, who was in front of the plaintiff and about entering the way car, and warned him off. O'Neil stooped and pulled the pin which coupled the way car to the train, and raised up and signalled the engineer, who put on steam, which increased the speed of the train suddenly, producing a jerk, by reason of which the plaintiff and another of the employes fell in the opening made in the train, by the uncoupling and increased speed, and were run over by the caboose. One of the

plaintiff's legs was broken and crushed in such a manner as to require amputation above the knee, and he was otherwise injured. The other employe who fell from the car at the same time was killed.

The theory of the plaintiff is that the conductor was negligent in uncoupling the car and giving the signal to the engineer, and that the engineer was negligent by putting on too much steam, suddenly producing a violent jerk which threw him from the car. Counsel for the defense contend that the plaintiff was guilty of contributory negligence by standing within from three to five feet of the end of the car, knowing that the conductor pulled the pin and made the signal, and knowing that the man in front of him had been warned of the danger; and by carelessly standing still without attempting to avoid injury to himself by any means whatever.

At the instance of the plaintiff the court submitted to the jury certain special interrogatories, which, with the answers thereto, were as follows:

"1st. Were the conductor and engineer on defendant's train guilty of negligence which was the proximate cause of the injury? Answer. Yes.

"2d. Did O'Neil see Jeffrey on the tool car before he, O'Neil, pulled the pin between the way car and tool car? Answer. Yes.

"3d. Did O'Neil know where Jeffrey was standing on the tool car at the time he gave the signal to the engineer to go ahead? Answer. Yes.

"4th. Did O'Neil or the engineer give Jeffrey any warning, which was reasonably sufficient to have put him on his guard against what followed? Answer. No.

"5th. Was it the act of the conductor and the engineer that put Jeffrey in a place of danger? Answer. Yes.

"6th. Did O'Neil see Jeffrey's position on the tool car in time to have avoided the injury to him by exercising ordinary care? Answer. Yes.

"7th. If you answer the sixth question yes, then answer the following question: Did O'Neil, after seeing Jeffrey's position on the tool car, exercise ordinary care and precaution to avoid injuring him? Answer. No."

Certain interrogatories were also submitted to the jury at the instance of the defendant, which with the answers are as follows:

"1st. How near the rear end of the tool car was the plaintiff standing at the time he fell off? Answer. From three to five feet.

"2d. Was not he standing too near the end of the tool car to be reasonably safe, at the time he fell off. Answer. No.

"3d. Was he not at the time he fell off standing so near the end of the tool car that his position was evidently dangerous, in case the speed of the car he was on was increased in an ordinary degree, unless he held on to something or braced against the start? Answer. No.

"4th. Did plaintiff make any efforts at all to secure himself against a forward movement on the car on which he stood? Answer. No.

"5th. If he did make such efforts, what were they? Answer. No effort.

"5th. Did plaintiff see the conductor pull the pin? Answer. Yes.

"7th. How much time elapsed after the conductor pulled the pin, and before the speed of the tool car was increased? Answer. About five seconds.

"8th. Was plaintiff exercising ordinary and reasonable care for his own safety after he saw the pin pulled, and up to the time he fell off? Answer. Yes.

"9th. Was what plaintiff saw the conductor do and heard him say in the way of uncoupling, giving warning and signal, reasonably sufficient to put plaintiff on his guard against what was likely to follow? Answer. No.

"10th. Does the evidence show that plaintiff's injury was

in consequence of the negligence of any of the employes of the company? Answer. Yes.

"11th. If you say it was, then which one was it? Answer. Conductor and engineer.

"12th. In what particular things did such negligence consist, if you say there was such negligence? Answer. In cutting train in two while in motion and unusual jerk.

"15th. Did not plaintiff know as much about what was going to happen after the signal to go ahead was given as O'Neil did? Answer. No.

"14th. If you have answered that the injury was in consequence of the negligence of the conductor, then state in what such negligence consisted? Answer. In cutting train in two while in motion.

"15th. If in consequence of the negligence of the engineer, then state in what such negligence consisted. Answer. By giving an unusual jerk.

"16th. Did not the conductor after giving the warning and signal he did give, and knowing that plaintiff saw what he was doing, have reasonable cause to believe that plaintiff could and would secure himself from ordinary jerk of the train? Answer. No.

"17th. Is it ordinary prudence for a man with plaintiff's experience about trains to stand the distance he was from the rear of a car about to be cut off, under the circumstances this car was? Answer. Yes.

"18th. Did the plaintiff see and understand the signal to go ahead? Answer. Yes.

"19th. Did he have reasonable cause to know from anything he saw or heard that the car on which he stood was about to be separated from the car next behind it? Answer. Yes."

Questions one, four, and five propounded at the instance of the plaintiff were objected to by the defendant because each was in fact composed of two questions. The objection urged

is that said questions joined the acts of the engineer and conductor, and required the jury to answer whether by their joint negligent acts the accident happened. These questions, it appears to us, submit a single proposition, and although they embrace the acts of two of defendant's employes they are still a single question. They are not such as tend to confuse a jury by requiring them to draw a conclusion from many facts. Further than this the jury appear to have fully comprehended the questions, as will appear by the answers to interrogatories ten and eleven, propounded at the instance of the defendant. The attention of the jury was there directed to the same subject and they distinctly and plainly answer that plaintiff was injured in consequence of the negligence of the conductor and engineer.

II. The defendant moved the court to set aside the verdict because the same was against the evidence, and because the

1. RAILROADS: personal injury: negligence.

answers to certain of the special findings were the result of prejudice, and were not sustained by the evidence, and for judgment for the defendant upon the special findings. These motions were overruled by the court.

The motion for judgment for the defendant on the special findings was correctly overruled for the simple reason that the answers to the special interrogatories do not show affirmatively that the defendant is entitled to judgment. In regard to the special interrogatories submitted to the jury in this case we deem it proper to say that the court would have been fully justified in refusing to submit many of them to the jury. It is not the purpose of the statute authorizing this practice to permit parties to submit a lengthy cross-examination of the jury upon every conceivable fact in the case, whether it be proximate or remote to the main inquiry. Such a procedure tends only to confusion. The questions propounded are framed from the standpoint of the party propounding them, and are often (unintentionally it may be) unfairly put.

It is urged by counsel for the defendant that the special findings of the jury are inconsistent with each other and that the answers to the questions numbered 3, 8, 9, 13, 16 and 17 are so wanting in support from the evidence as to be "absolutely astounding." It is not our purpose to discuss these findings separately. We have carefully examined the evidence, which is fully presented in the record, and in addition to what has already been given as conceded facts in the case we will, without going into the testimony of the witnesses in detail, recite certain other facts which we think the jury were fairly warranted in finding from the evidence. When Jeffrey, the plaintiff, started for the rear of the train on the evening of the accident he was acting under the orders of those in charge of the train. The men were required to deposit their tools in the tool-boxes, and get their coats and buckets from the way car while the train was in motion. When he reached the tool boxes a man in front of him was about to step into the way car, and Jeffrey heard the conductor, O'Neil, say to him "stand back, do you want to get killed?" accompanying these words with an oath, and Jeffries testified " and I stopped where I was." Just as O'Neil said that, he pulled the pin, raised up, and the train was off with a sudden jerk, and Jeffrey was thrown from his feet and off the car. The jury were therefore warranted in finding that, up to the time when the plaintiff heard the warning to the man in advance of him, he was not only not negligent, but was acting under orders. Next, it is proper to consider the manner in which the way car was detached from the train. It appears that the uncoupling was made while the train was in motion, and the way car allowed to follow the train to save time in side tracking the train on one switch, and the way car and engine on another. And here it will be observed that the jury find, in answer to the fourteenth and fifteenth interrogatories propounded by the defendant, that the negligence of the conductor consisted in cutting the train in two while it was in motion, and that the negligence of the engineer consisted in " giving an

unusual jerk." It may well be inquired why was it necessary to cut the train in two while in motion, and what emergency was there that prevented the brake from being applied on the way car, and why should the engineer give the train a sudden jerk without any signal, where there were some forty men on it whose duty required them to be passing from one end of the train to the other. One witness, who was standing near the train, testified that there was a terrible jerk in the train. Another says, " all at once I heard a tremendous jerk. It was an unusual bump or jolt. I didn't hear any gradual taking up of slack." Another testified as follows: " This was a big sound; it was a severe bump at one surge, as I noticed it; I did not notice anything gradual about it." Another witness testified to the effect that the whole transaction including the pulling of the pin, the signal, the unusual jerk, and the falling of the men upon the track was very suddenly done. One witness says he never knew the train to start so hard without ringing the bell or giving warning. Another states that the " jerk almost instantaneously followed the signal." But we have given enough to demonstrate that there was evidence which fairly warranted the jury in finding that the conductor and engineer were chargeable with negligence.

It is urged, however, that the plaintiff was chargeable with contributory negligence because he heard the warning to the man in front of him, saw the conductor pull the pin and give the signal, and knew that the speed of the train would be increased, and that there would be danger in standing from three to five feet from the end of the tool car without taking hold of the locks or hoops on the tool boxes, or some stakes or standards which were in reach. But there is nothing in all the evidence to charge the plaintiff with notice of the unusual jerk which followed the signal, nor to advise him that precautions against it were necessary. He had the right to assume that the forward movement of the train would be made in the usual manner.

Much of the argument of counsel is devoted to what the plaintiff might have done to save himself from injury in the five seconds which the jury found intervened between the pulling of the pin and the jerk of the train. The jury have found that he was guilty of no negligence which contributed to the injury, and under all the circumstances surrounding the plaintiff, taking into consideration the exceedingly brief space of time intervening and the suddenness and violence of the jerk, which the plaintiff had no reason to apprehend, we are not prepared to say that the verdict should be disturbed, under the well known rule prevailing in this court. It will be understood that in reciting the foregoing facts we are giving only that phase of the case favorable to the plaintiff. That there was much testimony contradictory thereto is not to be denied. But our inquiry is, was the jury justified in finding as they did? We think they were, and that their verdict is fairly supported by the evidence.

III. The plaintiff was examined as a witness in his own behalf. Upon his re-examination he was asked by his counsel this question: " State whether or not after O'Neil gave the signal it occurred to your mind that there was a stake behind the tool box?" Another similar question was asked as to whether or not it occurred to his mind that there was a padlock on the tool box. Both of these questions were answered in the negative. The questions and answers were objected to by the defendant, and the objections were overruled. It is insisted that whether or not plaintiff thought of the means at hand by which he might have protected himself from injury is not the standard of care which was required of him.

We are united in the opinion that there was no prejudicial error in permitting this evidence to go to the jury. The writer hereof is of opinion that the defendant was precluded from objecting thereto, because in the cross-examination the plaintiff had been fully interrogated by counsel for defendant in regard to the stake and the padlock, and what he thought

when O'Neil stooped and pulled the pin. As the defendant's counsel took it upon himself to cross-examine as to the operations of the plaintiff's mind at the time of, or immediately preceding, the accident, an objection to the same line of evidence upon the re-examination of the plaintiff was correctly overruled. Greenleaf on Ev., V. 1, Sec. 468.

A majority of the court, however, are of the opinion that the evidence in question was inadmissible, upon the ground that it was not competent for the plaintiff to exculpate himself from negligence by showing his own forgetfulness; but that under the circumstances of this case the defendant was not prejudiced thereby; that the plaintiff was not called upon to guard against a danger which he had no reason to apprehend. The accident arose from being jerked off the car. If he had no reason to apprehend such accident it cannot be said that it was the plaintiff's duty to seize the stake or lock upon the tool box, and it not being his duty it was wholly immaterial whether he thought of them or not. The special findings of the jury show that they never reached the question as to such duty. They found in answer to the second special interrogatory that the plaintiff was not standing too near the end of the tool car to be reasonably safe, at the time he fell off. This means, of course, so far as he had reason to apprehend. Again, they found in answer to the third special interrogatory that the plaintiff's position so near the rear end of the car, and without holding on to anything, was not evidently dangerous, upon the supposition that there was to be a mere ordinary increase of speed. For answer to the fifteenth special interrogatory they found that there was such increase of speed as to result in an unusual jerk. In answer to the ninth special interrogatory they found that the plaintiff did not have sufficient warning to put him on his guard against what was likely to follow, when he saw the pin pulled. This shows clearly that he did not have reason to apprehend the danger to which he became exposed. It is wholly immaterial, then, whether he had in mind the stake or the lock

upon the tool box. He could most certainly have made a forward movement a step or two and secured his safety completely. Yet the jury found that he was excusable. This must have been upon the sole ground that he had no reason to think it necessary to take hold of the stake or lock. Upon this reasoning the majority of the court think that though the evidence was not properly admissible it was not prejudicial.

IV. Next it i s urged that the court erred in permitting an answer by a witness to the following question:

2. ____ : ____ " How often had you seen O'Neil cut that car off
evidence.    while the train was in motion, and in the evening when they were running into the station to put up for the night?" The answer was in substance that the witness might have seen it done about twice, probably. This evidence was not incompetent. The theory of the plaintiff was that it was unusual to cut off the way-car in that manner, and there was evidence tending to show that the plaintiff had not been in a situation to see it done. It was perfectly proper to show that the act of which plaintiff complained was unusual.

V. Thomas Reilly, a railroad conductor, was examined as a witness and stated: " If I were going to cut a freight train
3. ____ : ____ : in two, and run the engine and caboose on a side-
____ .      track, I would first cut the train off in front of the caboose, then I would put the flat cars on the side-track, then run back with the engine and get the caboose and take it where I wanted it. *There would be no impropriety in cutting of the caboose while it was in motion.* The last sentence we have indicated by italics was stricken out on motion of the plaintiff. The ruling of the court was unquestionably correct. It was proper for the witness to state the customary manner of separating and side-tracking the cars, but the propriety of any given method was a question for the jury, after having all the facts and circumstances before it. The conclusion or judgment of the witness upon the question of cutting a train in two while in motion was not proper as expert tes-

timony. *Hamilton v. The Des Moines Valley R. Co.*, 36 Iowa, 31; *Muldowney v. The I. C. R. Co.*, Id., 462; *Belair v. The C. & N. W. R. Co.*, 43 Id., 662.

VI. The court upon its own motion gave to the jury thirty-six instructions, which appear to cover every conceiva-

4.———: ———; ble question in the case. None of these instruc-

*instructions.* tions excepting two are claimed to be positively erroneous. It is urged, however, that they are general, and only contain specific facts favorable to the plaintiff. The defendant asked the court to give to the jury fifty instructions. They were all refused. It is urged that the court erred in refusing to give the 4th of such instructions, which is as follows: "If it appear that the plaintiff, without any necessity for so doing, voluntarily left a place of safety in the front or center of the train, and went to the rear of the tool car, and while standing there saw and understood that the conductor was about to cut the way car off from the one on which plaintiff was standing, and knew what the effect would be, and that his position would be rendered dangerous thereby, and yet never made an effort to secure himself from injury, such conduct would render him guilty of contributory negligence."

This instruction was properly refused. If it had been given and the facts therein recited had been found by the jury to have been established by the evidence there must necessarily have been a verdict for the defendant. But the instruction omits one important fact, which is again and again referred to in the evidence, and that is whether or not the plaintiff had time, after he became aware of the danger, to save himself from injury. The same may be said of the 5th instruction asked and refused. See *McNamara v. Dratt*, 40 Iowa, 413.

VII. The 14th instruction asked and refused was as follows: "If plaintiff voluntarily or unnecessarily placed himself in a dangerous position, and was injured thereby, he cannot recover." Counsel in argument submits this instruction

to us with the single remark " that it is a proper statement of the law." We think the court correctly refused the instruction, because a party may voluntarily and without actual necessity expose himself to danger and still not be chargeable with contributory negligence. That he was on the rear of the tool car of his own will, and without any actual necessity to be there, may be conceded, and still he may have been in the discharge of his duty as an employe of the defendant.

VIII. The sixteenth instruction asked and refused was as follows:

" The standing or being within two or three feet of the rear end of a flat car without being secure against jerks usual and incident to the handling of such cars, while the train was in motion, is of itself negligence, and if you find that plaintiff voluntarily placed himself in that situation your verdict must be for defendant." The eighteenth instruction was in substance the same. The refusal to give them to the jury is assigned as error.

These propositions, like instruction number 14, in effect state the rule to be that if plaintiff was in a dangerous position he cannot recover. It was for the jury to determine the question of contributory negligence, in the light of all the facts and circumstances surrounding the plaintiff at the time of the accident, and not from the mere fact of plaintiff being in a dangerous position, although he may have been in such position voluntarily.

IX. Lastly it is urged that the court erred in refusing to give the 20th instruction asked by defendant. It is as follows: " It is claimed by plaintiff's counsel in argument that although plaintiff himself was negligent, yet that if the conductor, O'Neil, saw his dangerous position, and by the exercise of ordinary care could have avoided the injury, and if he failed to exercise such care, plaintiff could nevertheless recover. The court instructs you no such issue is made in the case, and the failure of O'Neil to do so would not render defendant liable if the plaintiff was himself negligent."

· In the state of the record before us we do not deem it proper to determine the question argued by counsel, as to the necessity of pleading specially the facts necessary to recover where it is found that the plaintiff was negligent, but that such negligence should not be imputed to him because the employes of defendant failed to exercise proper care to avoid the injury after the discovery of plaintiff's negligence. If it should be held that such special pleading was necessary, the refusal to give the instruction asked and the giving of the converse of the proposition by the court was error without prejudice. The jury in their deliberations did not reach that question, but on the contrary they expressly found that the plaintiff was without fault or negligence. Having thus found, the question as to plaintiff's negligence and defendant's fault thereafter did not become a part of the case, and the giving of the instruction complained of and the refusal to give that asked could not have been prejudicial to the defendant.

AFFIRMED.