## PROSSER, RESPONDENT, v. MONTANA CENTRAL RAILROAD COMPANY, APPELLANT.

[Submitted November 6, 1895. Decided December, 21, 1895.)

NEGLIGENCE—*Coupling cars—Contributory negligence of brakeman.*—In an action against a railroad company by a switchman for personal injuries sustained while coupling cars, where it appeared that in order to use a road engine for switching purposes, a flat car with a brake was placed in front of it so that the switchman could mount the brake beam and hold by the brake staff while moving about the yard, it is a sufficient showing of negligence to go to the jury that the brake staff was bent so that when plaintiff grasped it in mounting the beam it swung around causing him to lose his hold and fall under the trucks. In such case the question of plaintiff's contributory negligence in attempting to use the car is for the jury, where it appeared that the brake staff was bent directly away from the plaintiff so that in mounting, so far as he could see, it was apparently straight and in a safe condition to be used.

SAME—*Evidence—Custom.*—Testimony of railroad employes that the purpose of placing a flat car having a brake, in front of a road engine while switching cars, was in order that the switchman might mount the brake beam and ride while moving about the yard, is the statement of a fact drawn from knowledge and observation of the business and is not the expression of an opinion.

EVIDENCE - *Hypothetical question.*—An objection to a hypothetical question that it does not state the evidence on material matters and assumes conditions not existing should point out wherein it is defective.

NEGLIGENCE—*Evidence—Custom.*—Where the act of the plaintiff was not negligence *per se* it is competent to show that persons experienced in the performance of the same act, under similar circumstances, performed it as he did.

SAME—*Instruction—Custom.*—The modification of an instruction offered by the defendant than "an established usage or custom among men engaged in the same employment cannot justify or excuse an act negligent in itself," by adding "unless known or acquiesced in by the defendant," while not as full as it should be, is not error, where the act of the plaintiff was not clearly shown to be negligence *per se.*

SAME—*Instruction—Verdict.*—Where the evidence was not conclusive that the plaintiff voluntarily and unnecessarily put himself in a dangerous position when he might have chosen a safer one, an instruction assuming such condition is not disregarded by a verdict for the plaintiff.

VERDICT—*Special findings.*—A party who submits no special findings upon any branch

of the case cannot complain of the refusal of the court to charge the jury that they might, in their discretion, render a general verdict or a special one.

CONTRIBUTORY NEGLIGENCE—*Burden of proof.*—Contributory negligence is a matter of defense and the burden of proving it is on the defendant unless the plaintiff's own case raises a presumption of contributory negligence, when the burden of proving its absence is immediately on him.

*Appeal from Eighth Judicial District, Cascade County.*

ACTION for damages for personal injuries. The cause was tried before BENTON, J. Plaintiff had judgment below. Affirmed.

*A. J. Shores,* for Appellant.

I. Plaintiff was clearly guilty of contributory negligence, both in his attempt to mount an advancing car by standing between the rails, and in his failure to discover the bent condition of the brake staff, if the condition of the latter had any thing to do with causing his fall. The evidence shows that there was no real occasion or necessity for the plaintiff to put his life in jeopardy, and that he voluntarily adopted the most hazardous of the several methods by which he might have discharged his duties. (*U. P. R. R. Co.* v. *Estes,* 16 Pac. Rep. 140; *Cunningham* v. *M. & St. P. Ry. Co.,* 12 Am. & Eng. R. R. cases, 222, 17 Fed. 882; *Dowell* v. *V. & M. R. R. Co.,* 61 Miss. 519, 18 Am. & Eng. R. R. cases, 42; *Roul* v. *East Tenn., V. & G. Ry. Co.* (Ga.) 11 S. E. 558.)

II. The plaintiff was guilty of negligence in failing to note the bent condition of the brake staff. When the car was within ten feet of the plaintiff if he had noticed the brake staff was bent, he would have had ample time to have abandoned his intent to make use of it, and left the track. The inference is irresistable that he did not give such attention to the act he was attempting to perform as its dangerous character required. (3 Woods' Railway Law, 1454, 1456.)

III. It was error to allow the plaintiff to state his opinion to the effect that the two flat cars were carried in front of the engine as a substitute for the foot board usually found on a switch engine. The witness might with propriety testify to the character and condition of these cars and the uses to which they

were well adapted from their character, condition and position in the train. From these facts the jury might draw a legitimate inference as to the purpose of the company in keeping the two cars in front of the engine. But the unstated purpose or intent of the company was not susceptible of proof by the method attempted here. It was not something to be sworn to as a fact by the plaintiff.

IV. It was error to admit evidence of the usual and customary way of mounting flat cars by brakemen acting under similar circumstances. The object of this evidence was to excuse the act of the plaintiff by showing that under similar conditions other brakemen are in the habit of taking the same chances of injury. (*Metropolitan Street R. R. Co.* v. *Johnson*, 18 S. E. 816; *Southern Kansas Ry. Co.* v. *Robbins*, 23 Pac. 113; *Mayfield* v. *Savannah G. N. Ry. Co.* 13 S. E. 459.)

V. The defendant requested an instruction as follows : "An established usage or custom among men engaged in the same line of employment, cannot justify or excuse the commission of an act negligent in itself." This instruction undoubtedly states the law. (*Larson* v. *Ring*, 43 Minn. 88.) The modification of it was as follows : "Unless known and acquiesced in by the defendant." There was no evidence to justify this modification and the instruction as modified is unsound. If employes adopt a method of doing work which is negligent, and the master acquiesces in such negligent practice, the most that can be said is that master and servant are both negligent and in such case it is clear that the law does not afford a remedy to the injured party. (*Ferguson* v. *Central Iowa R. R. Co.*, 5 Am. & Eng. R. R. Rep. 614.)

VI. The verdict is against law, for the reason that the jury disregarded the instructions of the court and declined to apply them to the evidence. (*Emerson* v. *County of Santa Clara*, 40 Cal. 543; *Carr* v. *Parks*, 44 Cal. 46; *Sweeney* v. *C. P. R. R. Co.*, 47 Cal. 15; *Aguirre* v. *Alexander*, 58 Cal. 30; *Crane* v. *C. & N. W. Ry. Co.* (Ia.), 37 N. W. 397.)

*Largent & Huntoon,* for Respondent.

The plaintiff's act, in order to amount to contributory negligence, must be the proximate cause of the injury—if not that defense will not lie. (Beach on Contributory Negligence, § 24, 25.) Under the testimony plaintiff's act was not the proximate cause of the injury. (*Galveston, H. & S. Ry. Co.* v. *Templeton,* 25 S. W. 137.) Nor did his acts amount to contributory negligence. The cases do not hold that the mounting of or dismounting from a slowly moving train is *per se* negligence; on the contrary, there are numerous cases where it is distinctly held otherwise, and in determining the question of contributory negligence, all the peculiar circumstances and surroundings of each case must be taken into consideration, and that the question should be left to the jury to determine under proper instructions. (*Eppendorf* v. *Brooklyn etc., R. R. Co.,* 69 N. Y. 195; *Morrison* v. *Erie R. R. Co.,* 56 N. Y. 302; *Mendall* v. *N. Y. Central R. R. Co.,* 91 N. Y. 420; *Filer* v. *New York Central R. R. Co.,* 49 N. Y. 49; *Thurber* v. *Harlem etc., R. R. Co.,* 60 N. Y. 331; *N. P. R. R. Co.* v. *Egeland,* 56 Fed. Rep. 200; *N. P. & N. R. R. Co.* v. *Coulborn,* 1 L. R. A. 541; *Coates* v. *B. & M. R. R. Co.,* 10 L. R. A. 769; *Lowe* v. *Chicago, St. P. & M. R. R. Co.,* 56 N. W. Rep. 522.) Plaintiff had the right to assume that the brake staff was in proper condition and to act accordingly. (*Goodrich* v. *New York C. R. R. Co.,* 5 L. R. A. 752; *L. N. A. & C. Ry. Co.* v. *Buck,* 2 L. R. A. 220.) The negligence of the company is admitted for, as Beach on Contributary Negligence, § 64, page 90, (second edition) says : " In order to constitute contributory negligence on the part of the plaintiff there must be negligence on the part of the defendant." See, also, Thompson on Trials, page 1227; *Fernandes* v. *Sacramento Ry. Co.,* 52 Cal. 50, 52; Buswell on Personal Injuries, § 93, 94. Evidence of the custom of brakemen under similar circumstances was properly admitted. (*Coates* v. *B. & M. R. R. Co.,* 10 L. R. A. 769; *Cunningham* v. *C. M. & St. P. R. R. Co.,* 17 Fed. 882; *U. P. R. R. Co.* v. *Geary,* 34 Pac. Rep. 890; *Miller* v. *Illinois Central R. R. Co ,* 57 N. W. Rep. 419.

DE WITT, J.—This action was brought by plaintiff to recover damages for injuries received by him when in the employ of defendant as a brakeman and switchman. The plaintiff was engaged in switching cars at or near the station of Neihart, on the defendant's railway. The engine used on this occasion was a road engine. The distinction between a road engine and a switch engine is this: The road engine has a pilot in front; a yard or switch engine has a foot board, both front and rear, upon which the brakemen and switchmen step and stand while switching cars. The engine in this case had been used on the work ordinarily performed by a yard or switch engine. It had no footboards in front or rear, and therefore no convenient or safe place for the switchmen to mount and ride while engaged in their duties. Furthermore, in making up trains and switching cars, it was inconvenient to use a road engine, for the reason that the cars would have to be attached to the engine by a pilot bar, which is too heavy for convenient use. To convert the road engine to the use of a switch engine, two flat cars were placed in front of the engine. The second flat car from the engine was so placed that the braking apparatus was at the end furthest from the engine. It was equipped with a double connected brake and brake staff. The purpose of placing these flat cars as they were was to enable brakemen or switchmen to mount the brake beam, and hold by the staff, in moving about the yard while switching cars. The engine and these cars were moving down the track, and crossed a switch. Having crossed the switch, it was the duty of the plaintiff to throw the switch to let the train in on another track. As the last car passed over the switch, the engineer reversed his engine. The plaintiff threw the switch, and stepped into the middle of the track. The car approached him at the rate of two or three miles an hour. He stepped carefully upon the brake beam, and took hold of the brake staff carefully with both hands. The staff was loose in its socket, and was bent at an angle of about 30 degrees from the perpendicular. It bent away from the plaintiff, as he stood. He testified that for this reason it appeared straight to him,

and he could not tell that it was bent, and  that he did not  see
whether the.brake wheel was tipped from a horizontal.    Hav-
ing  carefully  and  firmly  grasped  the  staff,  it  turned in  his
hands,  swung  around  towards  him,  and  caused  him  to lose  his
hold  and  fall  under  the  trucks.  The  jury  awarded him  $2,500,
which  is  not  claimed  by  defendant  to  be  excessive,  if  there  is
any liability.

It  appears  further  that, although  the  engine  had  already
started  when  plaintiff  threw  the  switch,  he  signaled  the  engi-
neer  to  come  on.    He  said  that, at  the  rate  the  train  was  ap-
proaching,  he  could  have  gotten  off  the  track  if  he  had  seen
the  defective  condition  of  the  brake  staff  at  a  distance  of  6  or
10  feet.    He  did  not  see  the  defective  condition,  for  the  rea-
son  above  mentioned.    He  had  a  right  to  signal  the  engineer
to  stop,  if  there  was  occasion  to stop  in  the  performance of  the
business  in  which  the  train  was  engaged.    There  were  no
means  provided  for  mounting  the  car  on  the  side.    It  was  also
impossible  or  dangerous  to  mount  from  the  side,  owing  to  the
roadbed  being  washed  out  and  depressed.    He  was  obliged  to
get  upon  the  train  and  ride  in  order  to  be  at  a  point  about 340
feet  distant,  where  there  was  another  car  to  be  coupled.    He
could  not  have  walked  to  that  point,  while  the  train  was  mov-
ing  to  it,  and  be  there  in  time  to  make  the  coupling.    These
facts  appeared  by  the  testimony  of  the  plaintiff  and  two  other
witnesses.    These  two  flat  cars  were  equipped with  air  brakes,
and  while  plaintiff  was  employed  at  this  place  he  did  not  see
the  hand  brakes  used  for  braking  the  cars.    These  facts  being
shown,  the  defendant  moved  for  nonsuit,  upon  the  ground that
no  negligence  had  been  shown  on  the  part  of  the  defendant,
and  that  plaintiff  appeared  to  be  guilty  of  contributory  negli-
gence.

As  to  proof  of  negligence  or  contributory  negligence  suf-
ficient  to  go  to  the  jury,  the  writer  of  this  opinion  said  in
*Wall* v. *Helena St. Ry. Co.*, 12 Mont. 61, as follows:  ''I am
fully  aware  that  negligence  of  the  defendant  or  contributory
negligence  of  the  plaintiff  is  a  matter  for  the  jury,  unless  the
evidence  is  such  as  to  leave  the  matter  clear  and  undisputed

to persons of fair and sound minds.    It is needless to cite au-
thorities.    Their name is legion.    They are collected in the
citations above made.    I find their tenor to be that, if the
question of negligence or contributory negligence is a fairly
disputed question of fact, it must be resolved by the jury, but
that if the evidence is perfectly clear the matter is for the
court; and by 'perfectly clear,' the authorities say, is meant,
not perfectly clear in the view of the particular court or per-
sons composing the court which is reviewing the matter, but
rather in the judgment of reasonable men of sound minds.
That, is, if different conclusions might be drawn by different
men, of fair, sound minds, then the matter must go to the
jury; but if only one conclusion can be reached by men of fair,
sound minds, the determination is for the court.    This seems
to be a settled doctrine, and with it I fully concur.    But is it
not, practically, somewhat illusive?    For the court must de-
termine what would be the judgment of men of fair, sound
minds, and to arrive at that determination the court must use
its own sense and knowledge and judgment.    And as long as
courts are composed of finite men, with minds not all cast in
the same mold, we cannot but expect some diversity of views
in the application of the doctrine to particular facts.    This
may account for the confusion in the reported cases, and the
fact that decisions may be produced sustaining either side of a
contention of this nature which is at all close.''

In the case before us we are perfectly satisfied that there
was a sufficient showing of negligence on the part of the de-
fendant to go to the jury.    It was not perfectly clear that there
was no negligence by defendant.    The brake beam and brake
staff being used for the purpose of mounting the car by the
brakeman and switchmen, we do not hesitate to say that, to
allow the apparatus to remain in the condition it was, was a
showing of negligence sufficient to go to the jury.

The next question upon the decision of the court in denying
the nonsuit is, was it perfectly clear that plaintiff was guilty of
contributory negligence, so that that question should have been
taken from the jury, and the court grant a nonsuit?  ·  We do

not think that this was, by any means, perfectly clear. The plaintiff mounted the car with the utmost care. He mounted it just as it was intended he should. The cars were so arranged for this purpose. This was the only means by which he could mount and ride on the car in order to arrive at the car to be coupled in time to make the coupling when the train reached there.

The facts in this case differ from those in *Cunningham* v. *Chicago, M. & St. P. R. R. Co.*, 17 Fed. 882, in which case Mr. Justice Miller used such strong language in granting a new trial, and in which case the learned justice said that this was not only a case of clear negligence on the part of the deceased, but a case of stupid negligence on his part. We are scarcely prepared to fully endorse the remarks in 'that case, even upon the facts which there existed. But the distinction between the facts in that case and this is that here, so far as the plaintiff could reasonably be expected to see, the apparatus of the car was in a proper condition for him to make a safe mount. In the Cunningham case the deceased undertook to mount the footboard of a switch engine from which the hand railing had been torn away the night before. The case is not fully stated in the report, but, as far as it appears, it seems that the deceased could, by looking at the rear of the tank, have very readily perceived that the hand rail was missing. In this case, plaintiff could not see that the brake staff was bent, because it was bent directly away from him, and, so far as he could see, it might readily appear to be straight. And, seeing an apparently straight brake staff, it does not appear that he should also have looked at the brake wheel, to observe that it · was tipped, for the brake wheel might easily have been tipped from causes other than the bending of the staff. Taking the facts all together, we are not at all satisfied that contributory negligence was so clearly shown that the court should have removed that subject from the consideration of the jury, and ordered a nonsuit. We are therefore of opinion that in this respect there was no error committed by the court.

The treatment thus far brings us logically to the next as-

signment of error made by the appellant. We have discussed the question of nonsuit upon the ground, partly, that it was in evidence that the arrangement of the locomotive and cars shown was for the purpose of allowing the brakemen and switchmen to mount upon the brake beam by grasping the brake staff. There was an objection, however, to the introduction of evidence showing that this arrangement of the cars was made for this purpose. The plaintiff and two other competent witnesses testified that the cars were so arranged in order that employes might mount when moving, in the manner attempted by the plaintiff. The objection to this testimony was that it was an opinion of the witnesses that this arrangement was made for such purposes. The court admitted the testimony over the objection. We think this was not error. The witnesses did not give this testimony as an opinion. They, being employed in the business, and being cognizant and observant of the conduct of the business, stated, from this knowledge and observation, that as a fact the cars were arranged as described for the purposes mentioned. We think that their testimony was the statement of a fact which came under their observation. If they were mistaken, or if their testimony was not true, it could have been taken for simply what it was worth, and rebutted by testimony on behalf of defendant. But this testimony was not denied by the defendant.

The next question raised by appellant is its exception to the allowance of certain testimony. It may be stated as he puts it in his own brief, as follows: "Q. Mr. Ennis the testimony in this case shows that there were two flat cars, with double connected brakes, with brake staff and brake beam on the further end of the second car from the engine, and this was a road engine; that this engine and the cars had passed out of the side track where the switch had been thrown by the plaintiff, and the engine and cars were going on up to another track, about 340 feet, to make a head-end coupling with other flat cars, and that it was necessary for the plaintiff to be at the cars to make the coupling; that the engine and cars were approaching the plaintiff at the rate of about three miles an hour; that

there were no hand holds, stirrups, or jaw straps, or other means of mounting the approaching cars from the sides; that these flat cars had double connected brake on the end nearest the plaintiff; were attached to the engine for the purpose, among others, of allowing the brakeman to step upon the brake beam, and take hold of the brake staff and mount the car. It appears, also, from the evidence, that on the west side from the track upon which the plaintiff stood the embankment was low, and depressed from two to three feet below the track, the ties stuck out over the embankment, large rocks and boulders were lying along the track, and that the east side of the track from where the plaintiff stood, the ground was low and depressed, and another track, known as the 'Main Track,' came into this side track where the plaintiff stood, and on which this train was running. The evidence further shows that the plaintiff had no right to stop the train for the sole purpose of mounting the car, and that the engineer should obey the plaintiff's signals. You may state, from your experience as a brakeman, what is the usual and customary way of mounting flat cars by brakemen experienced in the business, under those circumstances? (Defendant objects to the question upon the ground that the question assumes a state and condition of affairs not existing at the time the plaintiff received his injuries. Does not truly state the evidence, in matters material to be considered, if the question is to be answered at all. That it misdescribes the conditions of the car the plaintiff attempted to mount, and fails to state its condition in important particulars disclosed by the evidence. The question assumes that there was a necessity for mounting the car while in motion. The question is further objected to upon the ground that the evidence is not relevant or material; upon the further ground that it is incompetent as proof of the usage or custom among brakemen and men employed as the plaintiff was employed, and cannot excuse the plaintiff's conduct as disclosed by his own evidence, such conduct being negligent as a matter of law.)''

We will examine the objections to the question as they were

made.    An examination of the record satisfies us that it is not
the fact that the question did not truly state the evidence on
matters material to be considered.    The question gave a very
fair statement of the facts.    Furthermore, the objection in
itself is open to criticism, in that it did not state wherein the
question was defective, or wherein it did not state the facts in
the case as a basis of the hypothetical question.    Appellant's
counsel elaborately argues the question that testimony as to
how persons other than the plaintiff performed acts similar to
that performed by the plaintiff is incompetent, and that proof
that other persons did negligent acts under the same circum-
stances is not evidence to excuse the doing of a negligent act
by the plaintiff.    But the competency of evidence to show acts
of carelessness by other persons is not the question here in-
volved.    From what we have said as to denying the motion
for nonsuit, it is apparent that the conduct of plaintiff was not
*per se* negligence.    He carefully mounted the car in the way
provided for him to mount in order to perform his duties.
The question was not as to what other persons did in a care-
less manner.    The question hypothetically stated the facts, and
then asked the witness to state, from his experience as a brake-
man, what was the usual and customary way of mounting flat
cars, under these circumstances, by brakemen experienced in
the business.    Therefore the question involved what an ex-
perienced person would do, not what other persons generally
did, or what careless persons did.    We think that the word
"experienced" is used here much in the sense of "prudent";
and the question, in effect, was put to a person experienced in
the business, as to what experienced or prudent persons did
under the circumstances.    The matter of the competency of
the question comes to this:    Is it competent to prove what
experienced or prudent persons do under the existing circum-
stances?    We will concede that it is not competent, in endeav-
oring to excuse a negligent act, to show that there is a usage
or custom by others to perform said negligent act.    (27 Am.
& Eng. Enc. Law, 889 *et seq.*)    But, when it does not appear
that the act is positively negligent, we are of opinion that

it is competent to show the usage or custom of competent and prudent persons in performing the act. In the case at bar it did not appear that the act of plaintiff was negligence *per se.* He carefully performed his duties with the means supplied him for their performance, and we think it was competent to show, under those circumstances, that persons experienced in the performance of the same act, under the same circumstances, performed it as did the plaintiff.

It is said in *Miller* v. *Illinois Cent. Ry. Co.*, 57 N. W. 418, 89 Iowa, 567: "The plaintiff introduced a witness who testified that it was usual and customary for brakemen, in going over the tender, to step on the lid of the manhole. We do not understand counsel to object to this line of evidence. It was surely proper for plaintiff to show that he was in the line of his duty when he received the injury, and that he pursued the course usually adopted by men in that employment under similar circumstances. (*Jeffrey* v. *Keokuk, etc., R. R. Co.*, 56 Iowa, 546, 9 N. W. 884; *Whitsett* v. *Chicago, etc., Ry. Co.*, 67 Iowa, 150, 25 N. W. 104.) The objection of the defendant is that the witness was allowed to state what he would do under the same circumstances, and what was considered a safe course to pursue. We need not set out the questions and answers to which objection is made. When the whole testimony of the witness is considered the objections do not appear to be well taken. The questions and answers show that the witness did not give his own opinion of the proper course to pursue."

As in the Iowa case, so in the case at bar, the witness did not give an opinion as to what he would do, but as to what experienced persons would do.

In *Larson* v. *Ring*, 43 Minn. 88, 44 N. W. 1078, there was a question as to negligence of contractors in stretching a guy from the top of a derrick across the street. The supreme court said: "The court erred in permitting defendant to show at what height or distance above the public ways it was usual for contractors to stretch or suspend guys or ropes." The court, in speaking further of usages and customs, said: "It would depend largely, perhaps, on whether there had been

adopted and used a way or means of fastening which time, usage, and long experience had demonstrated to be reasonably safe.'' It was upon this idea that the district court acted in admitting the testimony complained of  He did not admit testimony as to other persons doing careless acts, but, on the contrary, testimony as to what experience had demonstrated to be reasonably safe.

We find the following in Lawson on Usages and Customs (page 318): "Judge Story, in stating the degrees of negligence, and the measure of diligence in different relations, says: 'Indeed, what is common or ordinary diligence is more a matter of fact than of law. And in every community it must be judged of by the actual state of society, the habits of business, the general usages of life, and the dangers as well as the institutions peculiar to the age; so that, although it may not be possible to lay down any very exact rule applicable to all times and all circumstances, yet that may be said to be common or ordinary diligence, in the sense of the law, which men of common prudence generally exercise about their own affairs in the age and country in which they live.'' Further in the same volume, we find the following: "In *Vaughan* v. *Menlove* Vaughan, J., said, in speaking of the evidence of negligence: 'The conduct of a prudent man has always been the criterion for the jury in such cases, but it is by no means confined to them.'" See, also, by the same author, section 171, p. 324 See, also, 27 Am. & Eng. Enc. Law, p. 902, with a large collection of cases.

We are satisfied that, under the circumstances of the case at bar, it was not error to admit this testimony.

The next error assigned by appellant is the modification of an instruction which it offered. The instruction offered was as follows: "An established usage or custom among men engaged in the same employment cannot justify or excuse an act negligent in itself.'' There does not seem to be an objection to this instruction as a matter of law, but, as noted in the treatment of the motion for a nonsuit, it did not appear clearly that the act of the plaintiff was negligent in itself. The court

refused to give this instruction as it stood, and modified it by the following: "Unless known and acquiesced in by the defendant." This modification was not as full probably as it should be; but we are of opinion that error cannot be predicted upon it under the facts of this case, and in consideration of the fact that there was no evidence in the case to the effect that, in the arrangement of the cars, the brake beam and brake staff were for the purpose of mounting as the plaintiff mounted.

The next question presented by appellant is that the verdict is against the law, for the reason that the jury disregarded the instructions of the court, and declined to apply them to the evidence. This is a proposition of law with which we fully concur,—a proposition which is fully discussed in the case of *Murray* v. *Heinze, ante,* page 353. But the question here is, was the verdict against the instructions? The first instruction contrary to which the appellant claims the verdict was rendered is as follows : " If, in the discharge of a dangerous duty, an employe of a railroad company voluntary places himself in a dangerous position unnecessarily, when there is another place that is safer that he could have chosen, and he has time to exercise his judgment, and an injury results to him by reason of his position, he cannot recover for such injury." But it is to be observed that this instruction lays before the jury the conditions of an employe voluntarily placing himself in a dangerous position unnecessarily, when there is another place safer that he could have chosen, etc. But, as appears in the treatment of this case heretofore in this opinion, the evidence is not conclusive that the plaintiff voluntarily and unnecessarily put himself in a dangerous position when he might have chosen a safer one. That was an open and disputed fact in the case, and there was evidence, as before shown, sufficient to go to the jury upon this question; and the jury, in finding a verdict for the plaintiff, did not, by necessity, find against this instruction. The same reason applies to the other instructions contrary to which the appellant claims the verdict was rendered.

Appellant complains of the refusal of the court to give the following instruction :   " In this case the jury may, in its discretion, render a general verdict or a special one.   A general verdict is one by which you pronounce generally upon all the issues in favor of the plaintiff or in favor of the defendant.   A special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them, and those conclusions of fact shall be so presented as that nothing shall remain to the court but to draw from them conclusions of law."   In connection with this, the appellant complains that the court submitted to the jury two forms of verdicts only,—one a general verdict for the plaintiff, assessing the amount of the damages, and leaving the amount blank to be inserted by the jury.

It is said in *American Co.* v. *Bradford,* 27 Cal. 365, and *Swift* v. *Mulkey,* 14 Or. 65, 12 Pac. 76, that it is discretionary with the court whether or not it submit special findings to the jury.   But in the case at bar no findings were requested by the appellant.   He did not ask that the court submit special findings upon any branch of the case.   Not having made this request, he cannot complain of the action of the court.   It certainly would have thrown the jury into inextricable confusion to instruct them, as appellant requested, that they might find special findings or special verdict, when not the slightest intimation was given to them upon what questions of fact they should find.

Appellant complains that the court refused to instruct the jury that there was no evidence tending to show that the defendant had failed to use proper care to keep its track and roadbed in proper condition; nor that there was any evidence that would justify the jury in finding that the defendant had failed to use reasonable care in keeping the ground on both sides of the track in proper condition for use by the employes.   But, if this instruction had been given, it would have taken that question of fact wholly from the jury.   We are of opinion that there was some evidence at least upon this question,

and the treatment of this branch of the case seems to us to have been fully covered by other instructions which the court gave.

As to the exception to the refusal of the court to give instructions Nos. 7 and 12, requested by the appellant, without reciting them, we are satisfied to say that the questions there raised were covered by other instructions given by the court.

Appellant again complains of the refusal of the court to give the instruction requested by it, No. 15, as follows: "The undisputed evidence is that the plaintiff had the power to stop the engine and cars by a signal, and that it was the duty of the engineer to obey his signals." Following this was defendant's request 22, refused, as follows : " I charge you that the plaintiff had a right to stop these cars for the sole purpose of mounting them, if, in the proper discharge of his duties, it was reasonably necessary that he should mount the car on the brake beam, and if the act of mounting a flat car or the brake beam thereof, while moving at the rate of about three miles an hour, would ordinarily be attended by any considerable danger." It is true that the plaintiff had the power to stop the engine by signal for the purpose of mounting them, but his right to stop the train was only in the course of his business as brakeman, and it was all through the case a question whether his mounting the car while in motion was *per se* contributory negligence. We have determined that that was a question for the jury. If the court had given the instructions as charged, it would have taken that question away from the jury, and practically instructed the jury that it was contributory negligence *per se* to mount the cars as he did.

The appellant complains of the refusal of the court to instruct the jury as requested in Nos. 20 and 21, which are as follows: "It appears from the evidence that the plaintiff's injuries resulted from his own voluntary act, in mounting the car as it was in motion. This being the case, it devolves upon the plaintiff to satisfy you by a fair preponderance of the evidence that he was not guilty of negligence contributing to his injury." "Under the circumstances of the case, the burden

of proving that he was free from negligence contributing to his injury rests upon the plaintiff, and he must establish his freedom from such negligence by a preponderance of evidence.''

Counsel on both sides of this case have extensively argued the question of the burden of proof of contributory negligence. It is as unnecessary to review the law upon that topic in this opinion as it was to discuss it in the briefs, as it has long been settled in this state. (*Higley* v. *Gilmer*, 3 Mont. 97; *Kennon* v. *Gilmer*, 4 Mont. 433; *Wall* v. *Helena St. Ry. Co.*, 12 Mont., at page 56; *Nelson* v. *City of Helena*, 16 Mont. 19.) Contributory negligence is a matter of defense, and plaintiff need not allege or prove its absence. The corollary to this rule is that, whenever the plaintiff's own case raises a resumption of contributory negligence, the burden of proving its absence is immediately upon him, and it devolves upon the plaintiff to clear himself of suspicion of contributory negligence which he himself has created. (See cases last cited.)

The instructions refused were based upon the ground that the plaintiff had shown himself guilty of contributory negligence. As heretofore demonstrated, this was not the fact. The instructions were therefore inapplicable and properly refused. It did not appear by the testimony on the part of the plaintiff that there was a presumption of his contributory negligence.

Having reviewed the points raised upon this appeal, we are of opinion that the judgment and the order denying a new trial should be affirmed, which is accordingly done.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.