# Louisville & Nashvillle Railroad Co. v. Bouldin, Adm'x.

*Action for Damages for Death of Employe from Negligence of Co-employe.*

1. *Employe; when he can assume other employes do their duty.* Although by a rule of a railroad company its employés, for whose government the rule is made, are warned that they must assume the ordinary risks of their employmènts and must see for themselves that the premises on which they are to work are in proper condition for the service required, a switchman has the right to assume that other employés who are specially charged to keep the tracks where his work is to be done in safe condition, have not placed an obstruction in dangerous proximity thereto or allowed it to remain there; and it cannot be said as a matter of law that he is negligent in not seeing or removing it.

2. *Ordinary risk what is not to an employe of a railroad company.* The risk of being killed by an obstruction left in such proximity to a track that a switchman in the casual, incidental and natural movements and position of his person when in

place for the discharge of his duties, is liable to come in fatal collision with it, is not an ordinary risk of the service which he accepted upon entering and while remaining therein.

3. *Ordinary care; when engineer is not lacking in.*—The engineer of a switch engine is not lacking in ordinary care and prudence in failing to warn a switchman of an obstruction near the track, when from the point of view of the engineer there was no more than a bare possibility that the switchman would be injured by it, and when the circumstances of the situation of each party justified the reasonable conclusion that the switchman was aware of the presence of the obstruction.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

This action was brought by Sallie M. Bouldin as administratrix, to recover damages from the defendant for the death of her intestate. Richard M. Bouldin was killed while discharging the duties of switchman for the Louisville & Nashville R. R. Co. The evidence was conflicting as to the manner in which he came to his death. But in view of the matters dealt with in the opinion it is sufficient to state the following facts. In order to do the switching it was necessary for the switchman to stand on the foot board just in rear of the tender of the engine. At the time of his death the duties of the deceased called him to the end of the switch board, on that side of the track where there was an oil box so near to the track that by a slight or causal protrusion the foot of the switchman would strike it; and there were tendencies of the evidence to show that such was the actual fact—that is, that the foot of the switchman struck the oil box and he was thereby thrown from his position and run over by the engine. There was evidence tending to show that the deceased came to his death by falling from the car while attempting to climb over the couplings and bumpers in going from one to the other end of the foot board. The questions in this case were whether if the deceased was killed by striking his foot against the oil box it was a negligence for which the company was chargeable that the oil box was so dangerously near the track, and whether it was the duty of the deceased to have seen the obstruction and guarded himself from injury from it; and whether the engineer of

the switch engine was negligent in not warning the deceased of the existence of the obstruction.

THOMAS G. JONES, for appellant, contended, that the affirmative charge should have been given to the defendant because first, the plaintiff's intestate under the undisputed evidence was guilty of contributory negligence. The intestate could have been killed only in one of two ways, either by failing in an attempt to pass from one end of the foot board to another over the coupling while the engine was in motion, in which event he was attempting a dangerous thing not called for by the demands of his employment; or he was killed by being thrown from the engine by reason of the fact that his foot was extended beyond the end of the foot board and came in contact with the oil box, in which event he wilfully and unnecessarily put himself in a position of known danger. Second, the question of contributory negligence aside, the death of the intestate was the result of peril incident to his employment and of which he was fully advised. On these points the following authorities are cited.—*Columbus & Western R. R. Co. v. Bradford,* 88 Ala. 575; *Schlaff v. L. & N. R. R. Co.,* 100 Ala. 289; *H. A. & B. R. R. Co. v. Walters,* 91 Ala. 435; *Hall v. L. & N. R. R. Co.,* 87 Ala. 708; *Holland v. T. C. I. & R. R. Co.,* 91 Ala. 444. (2). Bouldin was familiar with the place at which he worked; he had been warned; the dangers were apparent and spoke for themselves; he assumed the risk.—*Naylor v. The Chicago R. R. Co.,* 53 Wis., 561; *Gilberg v. Gider,* 144 Mass., 601; *Shaw v. Sheldon,* 103 N. Y., 667; *Green v. Cross,* 79 Texas; *Eureka Co. v. Bass,* 81 Ala. 200; *Birmingham Ry. v. Allen,* 99 Ala. 359. (3). The burden was on the plaintiff to show that the injury resulted from a cause which made the defendant liable; she did not show it.—*L. & N. R. R. Co. v. Bignon,* 98 Ala. 570; *Bromley v. Birmingham R. R. Co.,* 95 Ala. 405. (4). There was no defect in the car or apparatus or negligence in the way they were handled; the oil box could not have caused

the fall while climbing over the coupling; the cause of injury should not have been submitted to to the jury. *Hager v. The Ridge Ave. Co.*, 119 Pa. St., 70; *Sarendon v. Menoshee Co.*, 56 Wis., 338.

S. T. WERT and R. W. WALKER, *contra*.—If Bouldin failed to see the oil box not from negligence, but because his attention was on the discharge of his duty he could not be charged with negligence because of this failure. *Pierce v. Clavin*, 82 Fed. Rep., 550; *Dorsey v. Construction Co.*, 42 Wis., 583.

McCLELLAN, C. J.—We are not at all inclined to depart from the conclusions reached on the former appeal in this case that whether the intestate, Bouldin, fell under the tender, where he was run over and killed, in an effort to climb over the couplings and bumpers from one to the other end of the foot-board, or came in contact with the oil box, after he had safely passed over the couplings, etc., and was by such contact thrown or caused to fall under the wheels; and, in this latter case, whether he was guilty of such negligence in standing on the end of the running board, with his foot so protruding beyond it as to strike against the oil box, as would bar this action to recover damages for his death resulting from his foot having come in contact with the box, were each questions of fact for the jury; and further that if the presence so near to the track of the oil box was the cause of his death, the fact that he reached the position next it on that end of the foot-board by climbing over the bumpers, etc., from the other end is immaterial in the case. We also adhere to the view we then had that the position of this oil box so dangerously near to the track as to come in contact with the foot of a switchman casually allowed to slightly protrude beyond the end of the foot-board, if the jury found it was so near, might be counted upon as the result of the negligence of Oakley, the yardmaster, as of a person to whom superintendence had been entrusted in respect of keeping the tracks in the yard free fro mobstructions, and that there was evidence, which is also in the present record, on the issue of his said alleged negligence *vel non*. *Louisville*

*& Nashville Railroad Co. v. Bouldin,* 110 Ala. 185.

It follows that, in our opinion, the affirmative charge upon the whole complaint and upon the count alleging Oakley's negligence and all of that number of other charges which declare or assume that Bouldin was killed in his attempt to pass over the bumpers, or that he was guilty of contributory negligence in allowing his foot to extend over the end of the foot-board, or that Oakley was not negligent, etc., were each and all properly refused to the defendant.

Defendant's rule No. 130 which was put in evidence by it is as follows: "All persons entering or remaining in the service of the company are warned in accepting or retaining employment they must assume the ordinary risks attending it. Each employé is required to look after and be responsible for his own safety as well as to exercise the utmost caution to avoid injury to his fellows, especially in the switching of cars and in all movements of trains. Stepping upon the front of approaching engines, jumping on or off trains or engines moving at a high rate of speed, getting between the rails to couple or uncouple cars while in motion, and all similar imprudences are dangerous and in violation of duty. Employés of every grade are warned to see for themselves, before handling or using them, that the cars, machinery and tools which they are expected to use or handle, and the premises upon which they are expected to work are in proper condition for the service required, and if not, to put them in proper condition, or see that they are so put before using them. The company does not wish or expect its employés to incur any risks whatever from which, by the exercise of their own judgment, and by personal care they can protect themselves, but enjoins them to take time in all cases to do their duty in safety, whether they may at the time be acting under the orders of their superiors, or otherwise." It is insisted for appellant that under this rule it was the duty of Bouldin to discover and remove the obstruction which, under one phase of the evidence, caused his death, and that his failure in this regard was negligence as matter of law, proximately contributing to the disaster, and therefore barring recovery. We do not concur in

this view.   Granting that under the rule, or apart from it, indeed, there is a general duty of watchfulness and care upon all persons working in a dangerous place or with dangerous machinery, it is not and cannot reasonably be in all cases such an absolute requirement as that its casual pretermission will entail the consequences stated.   For instance, there is such general duty upon an engineer operating on the main line of a railroad, and yet he cannot be held responsible for the condition of the track over which he is required to run his engine at a speed, it may be, of a mile a minute.   There are other employés specially charged with keeping the track in proper condition, and he has the right to assume that they have performed their duty, and that the track is in proper condition.   So here, Bouldin's duties were those of a switchman.   These, it was upon him to discharge with care and diligence.   Others were specially charged with the keeping of the tracks where his work was to be done free from dangerous obstructions; and while in a general way the law as well as the rule required watchfulness and care on his part to the conservation of his own safety, he had to rely in large measure upon the assumption that employés charged to keep the tracks in a safe condition had not placed an obstruction in dangerous proximity thereto, or had not allowed it to remain there.   Having another line of duties to perform, being specially charged therewith, it cannot be said as matter of law that he was negligent in not removing this obstruction, not having seen it, or in not seeing it. Neither the law nor the rule imposed upon him the imperative and absolute duty of discovering and removing this obstruction or of conducting himself with reference to its presence.   The trial court properly so ruled on requests for instructions.

Nor can we concur with counsel that the risk of being killed by an obstruction of this sort left in perilous proximity to the track, so near indeed that a switchman, in the casual, incidental and natural movements and position of his person, when in place for the discharge of his duties, was liable to come in fatal collision with it, was an ordinary risk of the service and accepted by Bouldin upon entering and while remaining there.   And this

though this yard was used in building and repairing cars, and material therefor, as well as debris from injured cars, was often placed between these switch tracks, for it might as well be said that the switchmen assumed the risk of Oakley's directing or allowing an obstruction sufficient to wreck the engine to be placed immediately in front of it while in rapid motion. It is not an ordinary risk or one assumed by trainmen that is involved in placing an obstruction so near to the track that they are liable to be killed by it while in the customary and careful performance of their duties, as the jury might have found Bouldin was on this occasion. *Pierce v. Clavin*, 82 Fed. Rep. 550; *Dorsey v. Phillips & Colley Construction Co.*, 42 Wis. 583.

Bouldin had the same, or better, opportunities as had the engineer, to see this obstruction. There was, as we have said, a general duty of watchfulness upon Bouldin in respect of all such obstructions—not such as that a failure to discover could be said as matter of law to be negligence, still such as was calculated to give the engineer some assurance that he had seen this one. Then while the engineer knew or had reason to believe that Bouldin was on that end of the foot-board, did he have reason to believe that Bouldin was in such particular position thereon as that the oil box would strike him? The engine had just passed there with a man on that end of the board, as the engineer knew, and that man had not come in contact with the box, as the engineer also knew. There were of course any number of precise positions on that end of the board which could have been occupied without exposing the person of the switchman to collision with the box. From the point of view of the engineer, there was no more, we feel safe in saying, than a bare possibility that Bouldin's person would strike against the obstruction, even if Bouldin was not aware of its presence; and when is added to this the probability that Bouldin was aware of it, can it be said that the engineer was lacking in ordinary care and prudence in failing to warn Bouldin of the obstruction? Would a man of ordinary care and prudence have felt called upon under all the circumstances to have warned him? And it is the rule of ordinary care which obtains

in this connection—not of strict, or of the utmost care and diligence. Upon a very careful consideration of the evidence, we have reached the conclusion that it shows beyond controversy a state of facts upon which arose no duty on the part of the engineer to give Bouldin notice of the presence of this oil box, and that negligence cannot be affirmed of his faiure to do so. Many rulings of the court on charges requested, etc., are in conflict with this view, and on account of them the judgment must be reversed.

We do not think there is any merit in the exceptions reserved to the rulings of the court on the competency of testimony, and we deem it unnecessary to discuss any charges or other matters not embraced in what we have said above.

Reversed and remanded.