# North Birmingham Street Railway Company *v.* Wright.

*Action against Street Railway Company by Employee to recover damages for Personal Injuries.*

1. *Negligence; ordinary prudence; when superintendent can not be charged with negligence in failing to warn employee.*—One employed by a railroad company as a superintendent or foreman can not be charged with negligence, while in the discharge of his ·duties of superintendence, in failing to warn an engineer, who was under his direction and control, of the location of posts along the line of railroad, when the circumstances of the situation would justify the reasonable conclusion that the engineer was aware. of the presence of the said posts, or when the possibility of injury resulting to the. engineer while upon his engine from the proximity of the posts to the track is so remote that it would not occur to a man of ordinary care and prudence to warn him of the location of said posts.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by the appellee, James M. Wright, against the North Birmingham Street Railway Company to recover damages for personal injury.

The petition originally filed contained eight counts. After the argument in the case the plaintiff consented that the court should give the general affirmative charge in favor of the defendant upon all the counts except the eighth, and the court gave such charges.

The eight count alleged that the defendant was operating a certain railroad in Jefferson county, Alabama, and had erected or was erecting along the line of said railroad certain poles; that the plaintiff was in the employment of the defendant as an engineer and was running and operating a dummy engine on said line; that when the dummy engine reached a certain point on said road the plaintiff's head was struck against one or

more of said poles and he was injured, and he then averred that the injuries so inflicted upon the plaintiff were suffered by reason of and as a practicable consequence of the negligence of one Baker, an employee of the defendant, who had superintendence intrusted to him, in that "Baker negligently caused plaintiff to move said engine upon said railroad by the place where said poles were very near the said track, and by reason of said nearness were dangerous to plaintiff, without warning or notifying plaintiff, or causing him to be warned or notified of said nearness of the poles or of said danger."

The damages claimed were $10,000.

There were demurrers interposed to this count of the complaint, which were overruled. It is unnecessary to cite these demurrers in detail.

The defendant pleaded the general issue and by special pleas set up contributory negligence on the part of the plaintiff.

Upon the trial upon issue joined upon these pleas the following facts were shown:

The defendant was engaged at the time of the accident in converting its railroad from steam to electricity. The appellant was employed as an engineer of the steam dummy engine, and at the time of the accident was engaged in hauling a construction train, carrying material for the reconstruction which he knew was going on. In order to convert the road from steam to electricity it was necessary to use poles along the side of the track from which to suspend trolley wires, and the equipment being put in by the defendant was known as the "bracket system," in which the wires were suspended from brackets attached to poles placed three feet four inches from the nearest rail. It was agreed that the poles in question were placed that distance from defendant's rails, and it was shown that the bracket system was a standard system of construction and used on well regulated railroads of like character under like circumstances generally throughout the country. On the date of the accident to the plaintiff the poles in question had been put in position. On said date the plaintiff, while engaged in hauling material for the con-

struction of said road, was under the direction and control of one Baker, who was a foreman in charge of the work. In obedience to the direction of the said Baker, plaintiff hauled a load of poles from Birmingham to North Birmingham. In going to North Birmingham the poles which had been erected along the side of the track on which were to be put the brackets to support the trolley wires were on the opposite side of the engine from the plaintiff. After reaching North Birmingham the plaintiff, under Baker's direction, returned to Birmingham with two flat cars in front of his engine and on which cars laborers were being brought to the work. Returning to Birmingham, the poles which had been erected along the line of the road were upon the same side of the track as was the plaintiff when sitting at his place upon the engine. At a point of about four or five hundred feet from the pole where plaintiff was struck he stopped his train for a railroad crossing, and from this point to the poles the track was straight and the view was unobstructed in the direction in which the plaintiff was moving.

All the witnesses except the plaintiff testified that you could not look up the track in the direction in which plaintiff was moving without seeing the poles, which were about twenty-five feet above the ground and about one hundred feet apart.

The plaintiff testified that his view was sowewhat obstructed by the laborers in front of his engine; that he did not see the poles, and, not having been warned about them, did not look for them; that this was the first time he had been over the road where he was hurt. The plaintiff further testified that in going over the railroad crossing and while his engine was in motion he heard some rods underneath his seat in the engine knocking and rattling and making a great deal of noise; that it was impossible for him to find out what caused this knocking and rattling without looking out of the cab window, because the cab extended or projected over the rods; that for the purpose of finding out what caused this knocking and rattling of the machinery underneath his seat he projected his head from the engine window and looked underneath the window; that

he did not look ahead, but was examining the rods, and that while he was looking down, trying to find the cause of the rattling his head came in contact with one of the poles, and he suffered the injuries complained of.

The plaintiff testified that he was never warned or notified by said Baker or anyone else of the existence of said poles as they were placed.

The evidence showed without dispute that at the time of the accident it was broad daylight, and the poles were plainly visible to anyone looking for several hundred feet in either direction.

The defendant offered evidence which was uncontradicted that the bracket construction, which was being put in by it was regarded as standard and safe; that the poles on this road were set the full standard distance from the track and that from the outside of the cab of the engine on which plaintiff was riding to the poles the distance was one foot eleven inches.

The other facts necessary to an understanding of the present appeal are sufficiently stated in the opinion.

The defendant requested the court to give to the jury several written charges, and separately excepted to the court's refusal to give each of them as asked. Among the number was the following instruction: "If the jury believe all of the evidence they will find a verdict for the defendant on the eighth count of the complaint."

There were verdict and judgment for the plaintiff, assessing his damages at $1,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

ALEX T. LONDON and JOHN LONDON, for appellant. The court should have given the general affirmative charge requested by the defendant. It was not shown that there was any negligence on the part of Baker in failing to give warning to the plaintiff as to the poles. The nearness of the poles to the track was obvious, and it only required usual and ordinary observation on the part of the appellee to discover them. There is no duty or obligation on the part of an employer to give notice or warning of obvious danger.—*Wilson v. L. & N. R. R. Co.*, 85 Ala. 269, 274; *L. & N. R. R. Co. v. Boland,*

[North Birmingham Street Railway Co. v. Wright.]

96 Ala. 626, 632, s. c. 106 Ala. 641, 645; *E. T. V. &
G. R. R. Co. v. Turvaville,* 97 Ala. 122; *Bank's Case,* 104
Ala. 508, 516.

BOWMAN & HARSH, *contra,* cited *Meyers v. Hudson
Iron Co.,* 22 N. E. Rep. 631; *Scanlon v. Boston & A.
R. R. Co.,* 18 N. E. Rep. 209; *Pidcock v. Un. Pac. R. Co.,*
17 Pac. Rep. 191; *White v. Worsted Co.,* 144 Mass.
276; *Loeder v. St. L. I. M. & S. R. R. Co.,*
100 Mo. 673; *Wuotilla v. Duluth Lumber Co.,* 37 Mich.
153; *Johnson v. St. Paul, M. & M. R. R. Co.,* 43 Minn 53.

McCLELLAN, C. J.—The trolley poles by the side
of defendant's track were only three feet four inches
clear of the ball of the rail next to them. They were
twelve inches in diameter at the base and they stood
twenty-five feet above ground. The track approaching
them from each direction and passing them was straight,
and there was nothing to obstruct a view of them by
persons on the engine going in either direction. It was
little short of marvelous if Wright did not see them
as he was going out though he was on the side of the
engine furthest from them. His duty was to keep a
lookout along the track ahead of his engine. Presuma-
bly he discharged that duty. It is scarcely conceivable
that he could have looked along the track ahead and
failed to see these poles as he went out from Birming-
ham. Baker knew when he started him back to the
city that he had just previously come thence along this
track by the poles. Had Baker's attention been specially
directed to the matter, he would most naturally have
supposed that Wright had seen the poles and knew of
their location with reference to the track. So on the
return trip. Then the poles were on Wright's side of
the engine. The track along there and the poles were
in the open country. In his view ahead the poles were
the most conspicuous objects. Between them and the
line of railway there was abundant room for safe pass-
age of the engine and train and for the safe perform-
ance by the engineer of every duty which any man of
ordinary foresight, care, prudence and precaution could
have anticipated he would be called upon to perform.

The distance from the outer line or surface of the engine cab to the inner line of the poles was twenty-three inches. The poles were one hundred feet apart. There were only four or five of them. For the engineer to be injured while passing the poles and by them it was necessary for him to protrude his body through the window of the cab, within a fraction of an inch of the distance of two feet. The only possible occasion for thus subtending himself was such a rattling and knocking of rods immediately under Wright's seat in the cab as indicated some disorder or break there. We take it that the occurrence of such occasion is rare indeed, and not a thing to be anticipated. It would seem, too, that the anticipation of such an occurrence would involve no anticipation that the engineer would in consequence thus protruds his person through the window, since if the disorder was slight and immaterial looking at it was unnecessary and if it was material looking at it would not remedy it, and in either case the most natural thing for the engineer to do would be to stop, alight and examine it from the ground. From the point of view, therefore, of Baker, the possibility of Wright's throwing his body so far out of the cab window as he was passing these poles so as to bring his head in collision with one of them was so essentially and infinitely remote, so beyond all anticipation enjoined by ordinary prudence as that the necessity of warning Wright of the location of the poles would never have occurred to a man of ordinary care and prudence. Under the circumstances Baker was not called upon to assume that Wright had not seen the poles as he came out, nor, if not then, that he would not see them on the return trip, nor, though he had not seen them before that he would not look ahead for any obstruction and then see them before thrusting his body so great a distance beyond the line of his cab, nor, though he never saw them, that he would have any occasion for so exposing himself. And our conclusion therefore is that, even conceding that Baker had or was chargeable with knowledge of the location of the poles, which we do not decide, yet he was guilty of no negligence in failing to inform Wright in that regard. This conclusion is in line with

the authorities generally which will be found collated in an exhaustive and able note to the case of *James v. Rapides Lumber Co.*, 44 L. R. A. 36-90, and with the principles declared in our own cases, and it is squarely and directly supported by the decision of this court in *Louisville & Nashville Railroad Company v. Bouldin*, 121 Ala. 197, 203.

The trial court should, therefore, have given the affirmative charge requested by the defendant; and for the error committed in its refusal the judgment must be reversed. The cause will be remanded.

Reversed and remanded.