## REYNOLDS v. NICHOLS & Co.

1. CONSTITUTIONAL LAW: REPEAL. Chapter 147 of the Code of 1851, remained in force after the adoption of the constitution of 1851, (and until the enactment of banking laws in accordance with the provisions of article 8 thereof.) In the exercise of the power conferred by said article, the legislature may prohibit, as well as permit banking.

2. POST NOTES. Post notes, issued by a corporation to circulate as money, which were void under the Constitution of 1846, were not rendered valid by the provisions of the Constitution of 1857.

3. VOID CONTRACTS. Contracts which have for their object any thing which is repugnant to the common law, or contrary to the provisions of any statute, are void and will not be enforced.

4. SAME: DUBUQUE HARBOR COMPANY. The consideration of a note, secured by deed of trust, which was executed in 1857, was a certain sum represented by the "post notes of the Dubuque Harbor Company."

*Held,* 1. That the notes were absolutely void in the hands of any person.

2. That a contract supported by such a consideration will not be enforced.

*Appeal from Dubuque District Court.*

THURSDAY, DECEMBER 5.

BILL IN CHANCERY to sustain the sale of certain real estate under a trust deed. Complainant relies upon these grounds : *First,* Departure from the terms of the deed in the notice given of the sale ; *Second,* Usury ; and *Third,* Illegality of consideration. Upon the issues joined and the testimony, the bill was sustained and the injunction made perpetual, from which respondents appeal.

*Cooley, Blatchley & Adams* for the appellant.

I. The transaction was not tainted with usury. 1. The payment of interest in advance does not involve usury. 2 Pars. on Cont. 409. 2. The fact that the note was given for the post notes of the Harbor Company, which were worth only seventy per cent in the market, rendered the contract usurious. *The Bank of the U. S.* v. *Waggoner,* 9 Pet. 378. 3. The plaintiffs make no tender of the amount they admit to be really due, without which a court of equity will not interfere in their behalf. *Phelps* v. *Pierson,* 1 G. Greene 126; *Sloan* v. *Coolbaugh,* 10 Iowa 33; 2 Parson's Cont. 404; *Rogers* v. *Rathburn,* 1 John. Ch. 367 ; 4 Bouv. Inst. 104.

II. Were the post notes void?

1. The post notes were issued after the adoption of the new constitution. Did the new constitution repeal or can-

cel § 2734 of the Code of 1851?  Const. 1857, § 1; Code of 1851, § 2734; New Const. art. 8; Rev. of 1860, note between §§ 4377 and 4378.

2. If the notes were issued in violation of law, they were yet valid in the hands of innocent holders.  *Rockwell* v. *Charles*, 2 Hill 500, is precisely like the present; *Bacon* v. *Lee & Gray*, 4 Iowa 494; Story on Prom. Notes § 191; 1 Am. L. C. 336.

*O'Neil* and *Harvey* for the appellee.

I. The loan of the Harbor Company post notes which were worth but seventy cents in the market, under a contract for repayment in good currency, in six months, was usurious.  *Gaither* v. *Farmers and Mechanics Bank of Georgetown*, 1 Pet. 37; *Bank of the U. S.* v. *Owens et al.*, 2 Pet. 527; *Archer* v. *Putnam*, 12 Smedes & Marshall 286; *Cook* v. *The Bank of Lexington*, 8 Ib. 543; *Bonaurant* v. *The Commercial Bank of Natchez*, Ib. 533; *Eagleson* v. *Shotwell*, 1 John. Ch. 537; *Pratt* v. *Adams*, 7 Paige 615; *Collins* v. *Secreh*, 7 Monr. 354; *Burnham & Co.* v. *Gentrys*, Ib. 354; *Warfield* v. *Boswell*, 2 Dana 225; *Moore's Executor's* v. *Vance*, 3 Ib. 361.

II. The harbor money which constituted the consideration of the note and deed of trust, was illegal and void.  Code of 1851, §§ 2731, 2733, 2734, as well between the parties thereto, as in the hands of third persons.  *Root* v. *Goddard*, 3 McLean 102; *Hazleton Coal Company* v. *Magargel*, 4 Penn. S. R. 324; *Broughton* v. *The Water Works*, 3 Barn. & Ald. 11; *Attorney General* v. *The Life and Fire Insurance Company*, 9 Paige 470; *Safford* v. *Wycoff*, 1 Hill 11; 1 Parson's Cont 380 and cases cited in note *f*; *Swift* v. *Bew*, 3 Denio 90; *Green* v. *Seymour*, 3 Sandford's Ch. 285; *White* v. *Buss*, 3 Cush. 448; *Hunt* v. *Knickerbocker*, 5 John. 328, 334; Edwards on Bills 326 and note.

WRIGHT, J.—As the injunction was made perpetual as to the collection of the entire sum secured by the trust deed, it is manifest that the bill was sustained upon the third or last ground. to-wit: the illegality of the consideration.

The deed was made to secure a loan in February, 1858. The consideration was, "Post notes of the Dubuque Harbor Co.;" made in Nov. 1857, issued by a corporation organized under the general incorporation laws of this State, transacting and having its sole place of business within this State; said notes being issued with the purpose and design of having them circulate as money.

The Constitution of 1846, art. 8, declares that no corporate body shall be created, with the privilege of making, issuing or putting in circulation any check, promissory note, certificate or other paper to circulate as money; and that the General Assembly shall by law prohibit any person, association or corporation from exercising the privilege of banking or creating paper to circulate as money. Accordingly, by chap. 147 of the Code of 1851, it is provided, that if any person subscribe to or become a member of any such association or company, he shall be fined and imprisoned; that all notes and securities made or given to any such organization, or given to secure the payment of any money loaned or discounted by any such company or its officers, are void; and that if any person or corporation shall issue any such bills to be loaned or circulated as money, or to be used as currency or circulating medium, they shall be fined not exceeding one thousand dollars. Our present constitution, which took effect September 3d, 1857, removes the prohibition contained in the former, and gives the legislature the power to create a State Bank, and banks under a general banking law, with certain restrictions and limitations. In March, 1858, two laws upon these respective subjects were passed which took effect in July of the same year.

It is suggested by appellants that the new constitution and the banking laws passed thereunder, repeal and remove the prohibitions and penalties contained in chap. 147 of the Code of 1851. We do not so understand it, as applied to the present subject and inquiry. Article 8, of the present constitution on the subject of corporations does not execute itself. The power is given to the legislature, subject to the vote of the people to create corporations with banking powers; but this power may not be exercised. It is not a power that *must* be exercised, but *may* be. Instead of conferring the power, the legislature, within the limitations and restrictions therein contained, may prohibit the issuing of paper to circulate as money, and such prohibition would be just as fatal as under the old constitution. At the time of issuing these "post notes," then, there was no law authorizing it, and if invalid and void under the constitution of 1846, they remained so notwithstanding the change in the organic law. Whether they so continued after the taking effect of the banking laws in July, 1858, it is not necessary to express an opinion, as this was long subsequent to the transaction now before us. Nor need we say how far these banking laws operate to remove the penalties and prohibitions of chap. 147 of the Code of 1851, (chap. 174, Rev. 1860,) as applied to all other corporations or associations.

Under the Code of 1851, in the light of the provisions quoted, can this transaction be upheld? It seems to us clearly not. Says SHAW, C. J., in *White* v. *Bass*, 3 Cush. 448: "It is well settled by the authorities, that any promise, contract or undertaking, the performance of which would tend to promote, advance or carry into effect any object or purpose which is unlawful, is in itself void, and will not maintain an action. The law which prohibits the end, will not lend its aid in promoting the means designed to carry into effect, and in this respect, the law gives no

countenance to the old distinction between *malum in se* and *malum prohibitum*. That which the law prohibits, either in terms or by affixing a penalty to it, is unlawful ; and it will not promote in one form that which it declares wrong in another." And it was held in *Springfield Bank* v. *Merrick*, 14 Mass. 322, that a note payable in paper prohibited by statute from being issued by a bank, was void and would not support an action. So the rule is declared as general, that all contracts or agreements, which have for their object any thing which is repugnant to the general policy of the common law, or contrary to the provisions of any statute, are void and not to be enforced. 1 Comyns on Cont. 30. And to the same effect see *Hunt* v. *Knickerbocker*, 5 John. 326 ; *Guenther* v. *Dewien*, 11 Iowa 133 ; *Marianthall et al.* v. *Shaffer*, 6 Ib. 223 ; *Davis* v. *Bronson*, Ib. 410, 425 ; *Sipe* v. *Finarty*, Ib. 394 ; *Craig* v. *Andrews*, 7 Ib. 17 ; *David* v. *Ransom*, 1 G. Greene 383 ; *Cole* v. *Parker*, 7 Iowa 167.

The statute expressly prohibited the issuing of this paper, and affixed a penalty for its violation. It was void, in its inception, void in the hands of any person. To allow a third person to recover, for it as a loan of money, would recognize that as right which the law has declared wrong. How more effectually could the courts of the State promote and advance an act which is unlawful, (the putting these notes in circulation,) than to hold that third persons could enforce all contracts having for their consideration this illegal and spurious paper. It seems to us none.

This view renders an examination of the other points in the case unnecessary.

Affirmed.