Keating *v.* The New York Central Railroad Company.

---

ANNA KEATING, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY, 1871.)

<div style="float:right">3 L    469<br>171 NY ²312</div>

The plaintiff, in attempting to enter the defendant's car, was thrown from the steps thereof and received injuries, for which she brought an action. It appeared that the train which the plaintiff expected to take had moved over and was extended across the street by which she was approaching the railroad, intercepting her route to the place regularly provided by the defendant for passengers to enter the cars.   There was evidence tending to show that when the plaintiff attempted to enter the car, the train was stationary; that no signal bell was rung or notice given for starting; that the car started with a sudden and violent jerk; that passengers were sometimes accustomed to take the cars at the same place when standing across the street, and there was no evidence that the defendant had ever objected or taken steps to prevent their doing so.—*Held*, that the question of contributory negligence on the part of the plaintiff was properly submitted to the jury.

It also appeared that the defendant's brakeman saw the plaintiff approach the train, and without looking to see whether she was about to get on the cars, gave the signal, upon which the train was started; that a fireman, and not the engineer, was in charge of the train; and there was evidence to show that the jar in starting threw the plaintiff under the car as she was rising upon the lower step of the platform and holding on to the railing.—*Held*, further, that the question of defendant's negligence was also properly submitted to the jury.

THIS was an appeal from a judgment for the plaintiff entered upon a verdict and an order of the Special Term denying a new trial on a case made.

The complaint alleged that the plaintiff, in attempting to get upon the cars of the defendant, at Niagara Falls, on a train leaving at six o'clock on the morning of February 7,

1868, for the purpose of going to Suspension Bridge, was, by the sudden and careless manner of starting the train, thrown under the wheels of the cars, whereby she lost her arm.

The answer was a denial of the complaint, and it averred that the injury was caused by the negligence of the plaintiff. The action was tried before Mr. Justice DANIELS and a jury at the Erie March circuit in 1870, and the plaintiff obtained a verdict for $5,000.

It appeared upon the trial that there was a depot provided at Niagara Falls for the accommodation of passengers, where provision had been made for their entrance into the cars, and where the baggage was checked, and where the conductor was accustomed to give the signal for the starting of the train, and that this was the only place at which such provision had been made at that place.

It also appeared that on the morning in question, which was foggy and somewhat dark, the plaintiff, desiring to go from Niagara Falls, where she resided, near by the depot, to Suspension Bridge, by the 6.40 o'clock A. M. train, for the purpose of accompanying her sister so far on her way to Detroit, came down a street (Third street), leading over the railroad tracks of the defendant, being the street by which access to the depot was obtained from her residence, and seeing the train which she intended to take, across the street, made haste and attempted to take it at that place, and was in the act of getting on the forward platform of the third one of the cars, there being four in all, when she was thrown under the wheel, and so badly injured that she suffered amputation of her arm in consequence.

It also appeared that the train, before it was in readiness to start or the baggage put on, had been backed across the street just before the plaintiff attempted to get on, for the purpose of dropping one of the passenger cars, and that it staid but time enough to uncouple in its position across the street, when the brakeman in charge gave a signal to the engineer for starting; that the engine had been left by its regular engineer in charge of his fireman, and that the latter started the

train back to the depot; that when the train had gone some thirty feet, the brakeman heard a scream and applied the brakes. The train was stopped, and the plaintiff was found entangled under the wheels of one of the cars. The brakeman had observed the approach of the plaintiff and her sister toward the train down Third street some ten or twelve rods from the cars while the train was backing across that street, but did not look for them or to see if they were getting on before giving the signal to start.

Evidence was given tending to show that the plaintiff attempted to enter the car when it was standing still upon the track across the street, and also contradictory testimony as to the ringing of a bell before starting the train back to the depot; also upon the question whether the car started violently and with a jerking motion.

It also appeared that it was sometimes the custom of persons to take the cars of the defendant while standing across the street in question, and at the place where the plaintiff attempted to take the car; and there was no evidence of any objection to their doing so on the part of the defendant, or notice forbidding them to enter the trains in that way.

The defendant's counsel then moved to nonsuit the plaintiff, upon the ground that there was no negligence on the part of the defendant, and for the reason that the negligence of the plaintiff either caused or contributed to the injury. The court denied the motion, and the counsel for the defendant excepted.

The defendant's counsel then requested the court to direct a verdict in favor of the defendant for the same reasons, which the court refused to do, and the counsel for the defendant excepted.

The court, among other things, charged the jury "that if the brakeman knew that persons approaching the train from Third street had been and then were accustomed to take the train upon the north side from that street, and he saw the plaintiff and her sister approaching the train upon that street in such a manner as should have fairly and reasonably pro-

duced the conviction in his mind that it was their purpose to take the train when they reached it, and he omitted to look before starting the train to see whether they had either got upon or were endeavoring to get upon the train, it was for the jury to say, in view of all the other evidence in the case, whether such omission was not negligent; and if it was, and produced the injury in controversy, and the plaintiff was free from fault on her own part, then the defendant was liable." To this charge the defendant's counsel also excepted.

The jury gave a verdict for the plaintiff, as above stated, &c., &c.

*A. P. Lanning*, for the appellant.

*John C. Strong*, for the respondent.

Present — Mullin, P. J., Johnson and Talcott, JJ.

By the Court — Johnson, J. The judge at the circuit properly refused to nonsuit the plaintiff, and also to direct a verdict in favor of the defendant, at the close of the evidence. It was clearly a case to be submitted to a jury upon all the testimony on the point of the defendant's negligence, and also upon the point of the contributory negligence of the plaintiff. Upon the question of the contributory negligence of the plaintiff in attempting to get upon the cars at that point, it was most clearly a question for the jury to determine, and one upon which their verdict must be deemed conclusive. The cars were not, it is true, standing, at the time the plaintiff attempted to enter, at the place provided by the defendant for passengers to enter, but were standing across the street by which the plaintiff was approaching for the purpose of taking her passage on the same cars. The testimony shows that the cars were extended entirely across the street, between the plaintiff and the depot where passengers most usually take the cars, and there was no way for the plaintiff to get to the depot except by passing over the platform of the cars, or by

Keating *v.* The New York Central Railroad Company.

waiting until they should be removed out of the way.   There is also evidence tending to show that the cars were standing still, at the time the plaintiff attempted to get on ; that no signal bell for starting had then been rung, and also that passengers coming along the same street were accustomed to take the cars at the same place, when found standing across the road in that manner.   There is no evidence that the defendant had ever objected to passengers taking their seats in the train at that point and in that manner, or given any notice to that effect, or taken any steps whatever to prevent it.   All the witnesses agree that it is just as convenient for passengers to get upon the cars from the sidewalk on that side as from the place prepared for getting on at the depot.   Probably ninety-nine persons of ordinary care and prudence for their own safety, in every one hundred, would, under the same circumstances, have made the attempt to get on, as did the plaintiff and her sister.

On the other question of the negligence of the defendant's servants in charge of the train on that occasion, it is equally clear that the case was one for the determination of the jury and not of the court.   The brakeman had seen the plaintiff and her sister approaching, and without looking to see whether they were about to get upon the cars standing right in their way, gave the signal to the person in charge of the engine to start.   The engine in obedience to this signal was instantly started, and as the evidence tends to show, with a sudden and violent motion or jerk, which threw the plaintiff down just as she was about rising upon the lower step of the platform of the car and holding to the iron rail.   The injury was caused by this fall and the moving cars, as all agreed.   It appears from the testimony of the defendant that the engineer who ran the train was not in charge of the engine at this time nor upon it, but that it was in the charge of the fireman alone, whose only experience upon an engine was that of fireman for two and a half years.   In the case of *O'Mara* v. *Hudson River R. R. Co.* (38 N. Y., 445), it was held, that the running of an engine across the frequented streets of a

village by a fireman alone, without an engineer, would justify a jury in finding a want of proper care on the part of the defendant. In this case it was most probably the mode of starting, which was the immediate cause of the fall and injury, and the jury might well have concluded that had the engineer then been in charge of his engine at this point where passengers were liable to get upon the cars, and were in the constant habit of doing so, the train would have been started differently, and in a manner not dangerous to persons attempting, at the time of such starting, to get upon the train. It was most clearly a fact for their consideration, and one which would of itself, justify a finding of negligence against the defendant. The other fact, so carefully and guardedly submitted by the judge at the circuit, of the want of care by the brakeman, if they should find the facts indicated on which such want of due care depended, was a proper subject for the consideration of the jury, and was properly submitted; neither the exception to the charge of the judge to the jury nor to his rulings is well taken.

The judgment must therefore be affirmed.