THE FRED MILLER BREWING COMPANY, Appellant, v. W. M. STEVENS, *et al.*

**Contract Against Public Policy:** AGENT'S BOND:   *Liquor laws.* Where a foreign brewing company, in 1892, had an agency in Iowa for the sale of liquors therein, in the original packages, and neither the company nor its agent had any authority to sell liquors as required by the statutes of such state, a bond executed in Iowa and delivered and accepted in Wisconsin and given by the agent to the company to account for the proceeds of the liquors sold, was void, under Code, section 1550, providing that all securities, etc., made in whole or in part for or on account of the intoxicating liquors so sold in violation of "this chapter" shall be void, etc., and act of congress, August 8, 1890, making liquors transported into any state, etc., for sale therein in original packages, subject to the laws of such state, etc., to the same extent as liquors produced therein.

LADD, J., took no part in this case.

*Appeal from Woodbury District Court.*—HON. SCOTT M. LADD, Judge.

TUESDAY, MAY 11, 1897.

THE defendants are sureties on a bond made by one C. E. Dennis to the plaintiff company.   The cause was submitted to the court, without a jury, on a

stipulation of facts, as follows:  "(1) That plaintiff is, and at all times in the pleadings mentioned was, a corporation duly chartered and organized under the laws of the state of Wisconsin, having its chief office at Milwaukee, in said state, and its business was the manufacture of beer and other rye products of a brewery, and that the plant for said manufacture and brewing was and is situated at Milwaukee, in the state of Wisconsin.  Said plaintiff conducts a very large business, and sells its products throughout the United States, including the state of Iowa, in which last-named state plaintiff's beers have a good reputation for purity and wholesomeness, and the demand therefor is large. The same is true of the state of Nebraska and South Dakota.  (2) That, for the more convenient handling and dispatch of a part of its said business, plaintiff established a depot and agency at Sioux City, Woodbury county, Iowa, for the handling of its trade in said city and county, as well as in contiguous territory, in the states of Nebraska and South Dakota.  (3) That plaintiff, for said purpose, maintained at Sioux City a refrigerator warehouse, having the facility of its own side track, and also wagons and teams for making local deliveries in Sioux City and short distances therefrom, in the states of Nebraska and South Dakota.  (4) That said depot or warehouse and agency were in charge of an agent to whom goods were shipped in barrels, half barrels, quarter barrels, eighth barrels, and sixteenth barrels, in wood, and also in pint and quart bottles, the bottles being in cases of two or more dozen bottles to a case, and also packed in barrels of several dozen bottles per barrel.  The sale of the goods did not carry the title to the barrels, packages, bottles, etc., in which the goods were shipped and delivered; but such packages, bottles, etc., remained the property of, and were to be returned to plaintiff.  (5) That plaintiff's goods were

sold and delivered to customers, both retailers and
private individuals, in Iowa, Nebraska, and South
Dakota, from said depot and agency, in the same bar-
rels, halves, quarters, eighths, and sixteenths, and the
bottled goods in cases or barrels, as the same were
packed for shipment, in Wisconsin, and received at
the depot at Sioux City.   When goods desired by such
customers were not in stock at the depot, orders
therefor were taken, and the same were subsequently
shipped from Wisconsin, and delivered through the
same depot and agency.   (6) That the agent at Sioux
City took orders for goods, delivered the same, and
was personally responsible for the safe return of all
packages, bottles, cases, etc.; and it was a part of his
duty to gather up the packages when empty, whether
barrels, halves, quarters, etc., or bottles in cases and
barrels, and return them to plaintiff at Milwaukee,
aforesaid; and for that purpose he had under him the
necessary porters, drivers, and laborers, and said agent
also received the cash, paid all purchases, and was
required to collect all accounts for goods sold, where
cash was not paid therefor, on the delivery thereof.
He paid the expenses of the agency out of such
moneys, and was required to render periodical
accounts to plaintiff, and remit the balance from time
to time.   (7) That on the sixteenth day of April,
1892, plaintiff employed Charles E. Dennis as its
agent, to conduct its said business at Sioux City,
Iowa, and, to enable the said Charles E. Dennis to
secure the said employment, the defendants united
with him in the execution of the bond, a copy whereof
is attached to the petition as a part thereof, marked
'Exhibit A.'   That said bond was executed by said
obligors therein, and sent to, and accepted by plaintiff
at Milwaukee, and said Dennis was duly installed in
said agency in pursuance thereof.   (8) That said
agency was terminated on the first day of August,

1893, and upon that day there was due from said Dennis to plaintiff, for moneys collected and not accounted for, which said moneys were the proceeds of beer sold and delivered from said agency between the sixteenth day of April, 1892, and August 1, 1893, packages not returned, and other properties not delivered up, returned, or accounted for, the sum of seven hundred and forty-five and sixty-nine hundredths dollars ($745.69), a true statement and account whereof is attached to the petition as a part thereof, marked 'Exhibit B.'    (9) That all the goods sold during the agency of said Charles E. Dennis was beer, which, under the construction of the statutes of the state of Iowa, is an intoxicating beverage." The district court dismissed the petition, and the plaintiff appealed.—*Affirmed.*

*Kean & Sherman* for appellant.

*Swan, Lawrence & Swan* for appellees.

GRANGER, J.—This case turns on the question of the validity of the bond on which the action is based. If the bond is void, it is because of a provision of section 1550 of the Code, as follows:   "All sales, transfers, conveyances, mortgages, liens, attachments, pledges, and securities of every kind, which either in whole or in part shall have been made for or on account of the intoxicating liquors sold in violation of this chapter, shall be utterly null and void against all persons in all cases, and no rights of any kind shall be acquired thereby, and no action of any kind shall be main tained in any court in this state for intoxicating liquors or the value thereof, sold in any other state or country, contrary to the law of said state or country, or with intent to enable any person to violate any provision of this chapter, nor shall any action be

maintained for the recovery or possession of any intoxicating liquor, or the value thereof, except in cases where persons owning or possessing such liquor with lawful intent, may have been legally deprived of the same." Assuming, for the moment, a state of facts to leave out of consideration all questions as to interstate commerce,—as, that the liquors were originally produced and owned in Iowa, by the plaintiff, and put upon the market, as shown by the stipulation of facts,—there would, we think, be no contention but that the bond would be void under the provision of the statute quoted, because it is a security, in whole or in part, made on account of intoxicating liquors, sold in violation of the chapter of which the section is a part, and it is therein provided in terms that no action shall be maintained for the possession or value of such liquors. This action is to recover the value of liquors, in part at least, and the bond is a security on which recovery is sought. These assumed facts will enable us to better understand how the situation is affected by the actual facts, because of the liquor being shipped from Wisconsin, and of the purpose and manner of its sale in Iowa. For the purposes of the case, at least, we think it may be said that the stipulated facts bring the case within the rule of *Leisy v. Hardin*, 135 U. S. 100 (10 Sup. Ct. Rep. 681), and other cases wherein the rule is announced that imported liquors are protected from the operations of our law, prohibiting their introduction into the state, until the property has passed the line of foreign commerce, and become a part of the general mass of property in the state, which we may understand to be when the importer has so placed it by a sale in the original package. It will be remembered that this bond was executed in April, 1892, and the transactions under it were of a later date. August 8, 1890, what is known as the "Wilson Act," passed congress, and became a law. It provides

as follows: "That all fermented, distilled or other intoxicating liquors, or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." The Wilson Act was under consideration in the case of *In re Rahrer*, 140 U. S. 545 (11 Sup. Ct. Rep. 865), and in that case the question of how the case of *Leisy v. Hardin* affected the legislative acts of this state, therein considered, which were held to be repugnant to a constitutional provision of the United States, was considered, and, after stating the grounds on which the case was reversed, it is said: "This is far from holding that the statutes in question were absolutely void, in whole or in part, and as if they had never been enacted. On the contrary, the decision did not annul the law, but limited its operation to property strictly within the jurisdiction of the state." By this we understand that the laws of the state, as they might operate on or affect commerce between the states, were limited in their operation by the constitution and laws of the general government, without impairing their force to operate under all conditions when not thus limited; that is, as the subject of commerce between the states is one exclusively of congressional control, existing state enactments become operative or inoperative, to conform to congressional regulations on the subject. A state law of to-day, in harmony with congressional regulations, may become limited in its operations by a congressional change in the future; and a state law of to-day, limited in its scope by

congressional regulations, may, by such changes, be relieved of such limitation, and be operative to the extent of the legislative purpose. . In the *Leisy-Hardin Case* it is held that the absence of congressional legislation on the particular subject of such interstate commerce is taken as a declaration against restriction of such commerce by the states, and hence, in so far as our law affected such commerce, its operation was limited. The limitation then extended to a denial of the right to interfere with liquors brought within the state until it should, by a sale or in some other manner, become mingled with and become a part of the general property of the state. The Wilson Act so far changes the congressional regulations on the subject as to make such liquors subject to the operation of the state laws upon their arrival in the state. The effect of the act is to make such liquors, upon their arrival, a part of the general property of the state for the purpose of the operation of the state law.

With these general propositions settled, we may notice some particular claims of appellant. The laws as to which the liquors are made subject by the terms of the Wilson Act are those of a police nature, and it is said such laws have never been called into action, by which is meant that the laws have never been invoked as to the liquors, and it is said that some sales of liquors are lawful. We do not think such to be legitimate inquiries. As we said at the outset, this action is on the bond, and the inquiry is, is it valid? If not, it is because it was void at its inception. The bond shows that it was to be a security for the acts of Dennis in the sale of liquors. There is no pretense of a permit or authority to sell the liquors in Iowa. The sales were presumably in violation of law, and intended to be so. *State v. Cloughly*, 73 Iowa, 626 (35 N. W. Rep. 652). Nothing in the stipulation of facts shows the sales intended by the bond, or made, in pursuance

of it, to have been legal.   The bond is plainly for the protection of plaintiff in its operations in violation of the laws of the state.

It is said that the bond is of itself an act of interstate commerce, in that it was "executed in Sioux City, Iowa, sent to, delivered, and accepted in, Milwaukee, Wisconsin." We are hardly willing to believe that counsel mean that the manner of execution—because the bond was, in its preparation and completion—passed between two states— made it a matter of interstate commerce, so that its validity cannot be questioned in a state court. The state law in no manner attempts to regulate those matters. We think it makes no difference how or where the bond was executed. It was a contract to be performed in Iowa, and so intended. It is, to all intents and purposes, a contract in violation of Iowa laws, and its enforcement is sought in Iowa.

This cause was submitted in January, 1897. On the first day of March, 1897, the supreme court of the United States handed down its opinion in the case of *Allgeyer v. State of Louisiana*, which is reported in 17 Sup. Ct. Rep. 427, and our attention has been called to it since the opinion in this case was prepared. It is thought that the case sustains appellant's view, but we think it strongly supports our conclusion in both its reasoning and citations. The question involved is entirely different from the one in this case. The rule of that case is that, notwithstanding the law of the state of Louisiana to the contrary, a citizen of that state, or a person therein, has the right to contract with a corporation outside that state for insurance on his property in that state, where the contract is both made and to be performed outside the state; and that a person within the state may, to effect such insurance, write a letter or notification to the company because of which the insurance attaches. It is held

that to deny to a citizen that right is violative of the fourteenth amendment to the constitution of the United States, in that it deprives him of his liberty without due process of law, because, as therein stated, "the liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties, to be free to use them in all lawful ways, to live and work where he will, to earn his livelihood by any lawful calling, to pursue any livelihood or vocation; and, for that purpose, to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned." As showing the application of the constitutional rights, as defined, we further quote from the case as follows: "The mere fact that a citizen may be within the limits of a particular state does not prevent his making a contract outside its limits while he himself remains within it. *Milliken v. Pratt*, 125 Mass. 374; *Tilden v. Blair*, 21 Wall. 241. The contract in this case was thus made. It was a valid contract, made outside the state, to be performed outside the state, although the subject was property temporarily within the state. As the contract was valid in the place where it was made, and where it was to be performed, the party to the contract upon whom is devolved the right or duty to send the notification, in order that the insurance provided for by the contract may attach to the property specified in the shipment mentioned in the notice, must have the liberty to do the act, and to give the notification within the limits of the state, any prohibition of the state statute to the contrary notwithstanding." There is no possibility of bringing the facts of this case within that rule. Call the contract

or bond an Iowa or a Wisconsin contract, and it still remains that it was to be performed in Iowa, and in violation of its laws. The judgment of the district court is right, and it is AFFIRMED.

LADD, J., took no part in this case.