## Baltimore & O. S. W. R. R. Co. v. Annie Clifford, Adm'x.

1. RAILROADS—*Duty to Keep the Road-bed Between the Tracks in Switching Yards in a Reasonably Safe Condition.*—It is the duty of a railroad company to keep its road-bed between the tracks in its switching yard in a reasonably safe condition, so that its switchmen can walk thereon with reasonable safety while coupling cars.

2. SAME—*Knowledge of a Defect by an Employe, When a Matter of Defense.*—The fact that an employe of a railroad company has knowledge of a defect in the track through which he receives an injury, is a matter of defense, and in the absence of evidence showing that he had such knowledge it will not be presumed that he had, since no one is presumed to knowingly incur physical pain and death where he can avoid it.

3. SAME—*Ordinary Care by Switchmen While Discharging Their Duties.*—Switchmen in the employ of a railroad company, while discharging their duties as such, and having their attention constantly directed

to moving cars and their coupling and uncoupling, can not be expected to give much attention to the condition of ties, switch bars, etc.

Trespass on the Case.—Death from negligence. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1901. Affirmed. Opinion filed December 10, 1901.

SHUTT & GRAHAM, attorneys for appellant.

MATHER & SNIGG, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

Appellee, as the administratrix of the estate of her deceased husband, James E. Clifford, sued appellant in the Circuit Court of Sangamon County, in an action on the case, for negligently causing his death while in the discharge of his duty as a switchman in appellant's yards near the city of Springfield.

The case was tried by jury and resulted in a verdict and judgment in favor of appellee for $3,750 damages.

Appellant brings the case to this court by appeal and urges the judgment reversed upon the alleged grounds that the court admitted improper testimony, and that the verdict is not supported by the evidence.

The declaration, among other things, charges that appellant negligently permitted its switch or side track connected with its main track just southeast of the city limits of the city of Springfield, known as the "Tansey Switch," to be and remain in an unsafe and dangerous condition. This switch is used in connection with its main track for switching cars on and off the main track when making up trains and storing cars, and to get cars standing on the main track off onto said switch, when trains were passing to and fro, or expected to pass upon said main track.

That the husband of appellee, in his lifetime, was in the employ of appellant as switchman to couple and uncouple, and switch its cars on said side track or switch, and it was the duty of appellant to keep and maintain said side track or switch in a reasonably safe and proper condition, so as

not to expose appellee's intestate to any unnecessary danger or liability while discharging his duties there as such switchman; yet appellant, not regarding its duty in that behalf, permitted its said side track or switch, to be and remain in said unsafe repair and condition by carelessly permitting certain cross-ties therein to remain above the surface of the ground some six or eight inches without having the ground between them and the bottom of the rails filled so that appellee's intestate would not be exposed to unnecessary danger while attending to his said duties there.

That while appellee's intestate was engaged in switching and coupling cars of appellant on said side track or switch, and was doing so hastily by direction of his conductor in order to get the same off the main track onto said side track so as to let a passenger train of appellant then due, pass thereon, and while he was using due care for his own safety in so doing, and was unfamiliar with the said dangerous condition of said side track or switch, he unavoidably stumbled over said exposed ties and fell onto one of the rails of said side track or switch and was run over and killed by the cars of appellant, which he was then and there engaged in switching and coupling.

And an additional count of the declaration also further charges that appellant negligently permitted the lever bar of the coupling apparatus attached to one of its freight cars to become and remain out of repair so that appellee's intestate, in attempting to couple the car to another car on said dangerous side track or switch, was compelled to walk in front of said car while it was in motion, and in so doing, got his foot caught between the ties where they were not ballasted, by reason of which he was thrown in front of said car and thereby killed.

Appellant pleaded not guilty.

The evidence shows that appellee's intestate had been in the employ of appellant as a switchman in its yards at Springfield for about two months, when he was killed by being run over by the car he was attempting to couple while it was being pushed from the main track onto the

"Tansey Switch," it being a part of appellant's switching yards at Springfield. He was what is called "field man," and in switching cars, rode on or near the end of the train, and when cars were being backed onto a side track he opened the switch and coupled the car on the end of the train to the car already on the switch, if any were there. If the car to be set in on the side track was equipped with an automatic coupler it was the duty of the "field man" to adjust the coupler so it would couple onto the other car.

About 9:35 o'clock A. M. of the day the deceased was killed, he and the crew with whom he worked, started with a C., B. & Q. box car from the Wabash "Y" at Tenth and Madison streets in Springfield, to take it to "Tansey Switch," which is just east of the city. At the time there were three coal cars in front of the engine and five box cars behind it, the C., B. & Q. car being the hindmost car of the five.

The C., B. & Q. car was equipped with an automatic coupler, and when the rear end of it had passed the switch stand at the Tansey side track about fifteen or twenty feet, the train stopped on the main track, and deceased got down from the rear end of the C., B. & Q. car, onto the ground, and remained there until the engine was cut off from the front end of the five box cars and pushed the three coal cars onto the Converse switch, which was some six or eight hundred feet further on. The engine, returning to the main track, coupled onto the front end of the box cars and commenced backing the five box cars onto the "Tansey Switch." The deceased then attempted to arrange the automatic coupler on the end of the C., B. & Q. car, in order to couple it to the end of a car on the switch by means of the lever at the end of the car, but it would not work, and he went in front of the moving car, walking between the tracks, and tried to adjust the coupler with his hands, and while so doing his feet went between the cross-ties, which were above the ground some six or eight inches, without ballast between them, causing him to stumble and fall, and the wheels of the car ran over and killed him.

It sometimes happens that the lever will not adjust the automatic coupler, and it is usual in such cases for the switchman to adjust the coupler with his hands, and in order to do so it is necessary for him to get his body opposite the end of the car.

At the time in question, a passenger train was about to be due to pass on the main track at the place in question, and the cars were being handled rapidly to enable it to do so.

It is contended that inasmuch as the deceased had worked in the yards for about two months before he was killed, he had such knowledge of the condition of the tracks therein that it will be presumed that by remaining in the service there, he assumed the hazard incident to the use he was making of the same when killed. But we think it was the duty of appellant to keep its road-bed between the tracks in its switching yard in a reasonably safe condition, so that the switchman could walk thereon with reasonable safety while coupling cars. I. C. R. R. Co. v. Sanders, 166 Ill. 280, and L. E. & W. R. R. Co. v. Morrissey, 177 Ill. 382.

And it was a matter of defense that the deceased had knowledge of the defects through which his injury was received, and in the absence of the evidence showing that he had such knowledge, it will not be presumed he had, since no one is presumed to knowingly incur physical pain and death where he can avoid it at his discretion. C. & E. I. R. R. Co. v. Hines, 132 Ill. 168.

And while the evidence shows that the deceased had worked putting cars on and taking them off the "Tansey" side track daily for about two months before he was killed, yet it also shows that appellant's switch yards, in which he worked, extended over several miles, and the attention of deceased, as such switchman, being constantly directed to moving cars and their coupling and uncoupling, he could not possibly give much attention to the ties, switch-bars, etc., over which he might, from time to time, have to pass. C. & E. I. R. R. Co. v. Hines, 132 Ill. p. 161.

The witness Keemer testified that the cross-ties were at

least four inches above the level of the ground and the track was not ballasted where the deceased was killed, and that a similar condition existed for some twenty-two or three car lengths beyond, and after he had so stated, there was an "objection by defendant (appellant) to that part of it except in the immediate vicinity of the point where the accident occurred. Overruled. Exception." And it is contended that the ruling of the court in that regard was improper.

While it was only material for the jury to know the condition of so much of the track as was involved in causing the injury in question, yet we are unwilling to hold that the court committed such prejudicial error in overruling the objection, as justifies a reversal of this case on that account alone; and being of opinion that the evidence supports the verdict and judgment, the latter will be affirmed.