WILLIAM CHITTICK v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

December 5, 1902.

Nos. 13,209—(98).

## Personal Injury—Negligence.

In this action, to recover damages for the loss of his hand, sustained by the plaintiff in attempting to adjust the coupler on a moving car, it is *held* that the evidence is sufficient to sustain the finding of the jury to the effect that the defendant was guilty of negligence in the premises, and that the plaintiff was not.

Action in the district court for Ramsey county to recover $20,000 for personal injuries. The case was tried before Otis, J., and a jury, which rendered a verdict in favor of plaintiff for $6,750. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Alfred H. Bright* and *Munn & Thygeson*, for appellant.

*Daly & Barnard*, for respondent.

START, C. J.

The plaintiff was an experienced switchman in defendant's railway yard in the city of Minneapolis on September 25, 1901, and for some time previous thereto. On the evening of that day, at about 7.30 o'clock, in attempting to couple two box cars, he lost his right hand, by reason, as he alleges, of the negligence of the defendant in permitting a pile of cinders and ashes to be dumped and to remain upon its railway track between the rails. This action was brought in the district court of the county of Ramsey to recover damages for such injury. A trial of the action resulted in a verdict for the plaintiff for $6,750. The defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict, or for a new trial. The sole question to be here decided is whether the verdict is justified by the evidence. The defendant's contention is that it is not, because upon the evidence it must be held, as a matter of law, that the defendant

1 Reported in 92 N. W. 462.

was not guilty of any negligence in the premises, but that the plaintiff's injuries were the result of his own negligence.

1. The evidence fairly sustains the finding of the jury that the defendant was guilty of negligence which was the proximate cause of the plaintiff's injury. The evidence on his part tends to show that on the evening stated he was working in the yard with an engine coupled to a number of box cars, and received orders from the foreman to go, with the engine and one car attached, upon a side track known as "track 5," several hundred feet away. This required the engine and car to pass down over a three-throw switch, and back up a lead track to a point whence track 5 branched off. He had control of the engine by signals which were given with his lantern. As the engine passed over the three-throw switch, he stepped off the foot-board on the tender, upon which he was riding, and threw the switch. After the engine passed the switch, he signaled the engine to back, and as the car reached him he stepped upon its brake beam, on the engineer's side, holding on by a hand hold on the end of the car, and rode back a distance of some eight car lengths, when he got off and went to track 5 switch. The engine and car stopped when about thirty feet from this switch, when he signaled the engineer to back up. He then passed over to track 5, and walked down outside the rails until he came in sight of a car standing thereon, which he then knew for the first time he was to couple onto. The engine and car attached were following about a car length behind him, at the rate of one to two miles an hour. When he was within ten or twelve feet of the stationary car, he stopped, and waited for the engine to back to him; giving at the same time the slow signal. As the moving car reached him, he stepped in front of it to adjust the coupler,—a Washburn,—so that it would couple onto the standing car, which had a Trojan coupler. Both couplers were in good condition. The lever for raising the coupling pin on the moving car was on the opposite side from him, and that of the stationary car on the same side. He raised the pin with his right hand, and pushed the knuckle of the coupler open with his left hand; and as he turned, taking a step or two forward, he stumbled against a heap of ashes and cinders which had been left between

the rails, and his feet caught therein, he lost his balance, and to save himself he caught hold of the coupler of the moving car in such a way that when the cars came together his right hand was locked in the couplers and crushed, so that it had to be amputated. The evidence also tended to show that the pile of ashes and cinders were dumped on this side track the afternoon of the previous day, and, further, that it was not the custom to leave such piles between the rails, and that whenever an engine dumped ashes on the track the fireman was required at once to spread them out level.

The evidence on the part of the defendant tended to show facts and circumstances from which it is claimed that the ash pile had nothing to do with the accident, and that the plaintiff's case, as to the cause of the accident, is a fabricated one, and, further, that he did not attempt to adjust the coupler on the moving car, but on the stationary car, and that by reason of some negligent act or misstep on his part his hand was caught in the coupling. The trial court correctly instructed the jury that if the defendant's claim was correct, and the plaintiff was injured while adjusting the coupler on the stationary car, he could not recover, for there was no defect in the coupler, and he assumed the risk.

While the evidence was conflicting in important particulars, as to the cause of the accident, and the negligence of the defendant in leaving the ashes on the track, the plaintiff's evidence is not, as claimed by defendant, so inherently improbable and inconsistent with admitted physical facts that the verdict should be set aside. The evidence made a fair case for the jury on the question of the defendant's negligence.

2. It is, however, contended by the defendant that, if it be conceded that the plaintiff was injured as he claims, still the evidence shows conclusively that he was guilty of contributory negligence in not observing the ash pile before going upon the track. The evidence as to the time, place, and circumstances of the accident clearly make this question one of fact. Again, it is insisted that he was negligent in attempting to adjust the coupler on the moving car, instead of going to the stationary one, where he could have used the lever in pulling the pin, instead of doing it with his

hand. In considering this claim, it is important carefully to note the facts which the evidence tends to establish. It is important to do so in every case, but we are led to emphasize this fact because from the argument of counsel it would seem that he was laboring under the misapprehension that the raising of the coupling pin by the plaintiff with his hand, instead of using the lever, was one of the proximate causes of his injury.

Each car was equipped with automatic couplers, as required by the act of congress, and with reference to this fact counsel says:

"The question arises whether the courts will uphold the employees, for whose benefit this law was made, and who understand it perfectly, in wholly disregarding its provisions, without the charge of negligence. The law having required the carrier to provide these instruments of safety for the benefit of the employees, is it too much to insist that the courts ought to say that the employees cannot neglect their use, except at the peril of being charged with contributory negligence in case of accident?"

If in this case the plaintiff had been injured in cutting a car out of a moving train, and used his hand to uncouple it, instead of using the lever, the suggestion would be in point, for the case would be, except as to the speed of the car, like that of Morris v. Duluth, S. S. & A. Ry. Co., 47 C. C. A. 661; 108 Fed. 747, cited and relied upon by him. That was a case of uncoupling cars, not coupling them. The person injured was engaged, as a brakeman, in placing upon a side track one of two cars attached to an engine moving at the rate of four miles an hour; and he unnecessarily went between the cars and lifted the coupling pin with his hand, instead of using the lever, which he could have done in perfect safety without going between the cars. It was rightly held that in so doing he was guilty of contributory negligence, for the reason that he knowingly selected an unsafe way for drawing the pin, when perfectly safe appliances for doing it had been provided. Now, it is undisputed in this case that a car having an automatic coupler may be uncoupled by simply pulling the pin by the use of the lever outside the rail, which is the only function of the lever; but, to couple a car, not only must the pin be drawn, but the

jaws of the coupler, which are in the middle of the car, must be opened by the hand of the operator, which necessitates his stepping between the rails. If the testimony of the plaintiff be true,—and the jury have found it so,—he was not injured in drawing the pin, nor in adjusting the coupler, for that matter, for as he turned after doing so he stumbled, and was injured by reason of the obstruction on the track. Hence the nonuse of the lever is not relevant to the question of his negligence, but the fact that he attempted to make the coupling on the moving car, instead of going to the stationary one to do so, is relevant, and presents the only doubtful question in this case. Was he guilty of contributory negligence, as a matter of law, in so doing?

There was no evidence that the defendant had ever made any rule forbidding the adjustment of the coupler on a moving car. On the contrary there was evidence tending to show that the plaintiff attempted to make the coupling in the customary manner; that it was equally as safe to make it on the moving car, if it was going slowly, as on the stationary one,—especially so when it was dark, or when the cars were close together. Even the defendant's yard master, called by it, testified that it was customary for the men in the yard to make the coupling on the car nearest to them, and that he himself would open the knuckle on the moving car if it was coming slowly. It was undisputed in this case that the car was moving about one-half as fast as a man could walk, that the plaintiff was an experienced switchman, and that, no matter on which car the coupling was made, the coupler would have to be opened by hand, and the operator step between the rails. Upon the whole evidence, we are of the opinion that the defendant was not guilty of negligence per se in attempting to open the coupler on the moving car, instead of doing it on the stationary one. Sobieski v. St. Paul & D. R. Co., 41 Minn. 169, 42 N. W. 863; Rifley v. Minneapolis & St. Louis R. Co., 72 Minn. 469, 75 N. W. 704; Munch v. Great Northern Ry. Co., 75 Minn. 61, 77 N. W. 541.

The defendant also claimed in the court below that the plaintiff was guilty of negligence in not adjusting the coupler when the car

was stopped at the switches. We do not understand that the claim is here urged. In any event, it is without merit.

Order affirmed.