CHARLES A. HAMILTON, Appellee, v. CHICAGO, BURLING-
TON & QUINCY RAILWAY COMPANY, Appellant.

**Railroads:** CROSSINGS: NEGLIGENCE: INJURY TO SWITCHMAN. A rail-
way company is required to use ordinary and reasonable care to
keep its yards and depot grounds in a reasonably safe condition
for its employees. In the instant case the jury was justified in
finding that defendant had negligently constructed and maintained
a crossing over its switch tracks composed of three inch planks
laid between and parallel with the rails with square ends, in some
cases warped upward and with no filling at the ends, against
which plaintiff stumbled and fell thus receiving his injuries.

**Same:** ASSUMPTION OF RISK. A switchman did not assume the dan-
gers incident to a plank crossing in the yards, where he had
neither notice nor knowledge of its dangerous condition.

**Negligence:** EVIDENCE OF CUSTOM. Unless an act is so obviously dan-
gerous as to constitute negligence as a matter of law, evidence of

the usual and customary method of doing the act is not admissible. In the instant case plaintiff, a switchman, was required to go between the rails while the engine was in motion to adjust the couplers, and for that purpose stepped off the running board in front of the engine, then moving slowly, when he fell upon a plank crossing and was injured. *Held*, that plaintiff was not as a matter of law guilty of contributory negligence; and, evidence that it was customary to get off the engine in the manner he did was admissible on the question of his negligence.

**Railroads:** PERSONAL INJURIES: CONTRACTS FOR BENEFITS: ENFORCE-4 MENT. The fact that plaintiff herein contracted with defendants relief department in a foreign state for certain benefits as sole compensation in case of accident, which he received, is not a bar to a subsequent action in this State for injuries received here; since a foreign contract will only be enforced as a matter of comity and not of right; and will not be given effect when, as in this case, it is in contravention of our own statutes.

*Appeal from Dubuque District Court.*—HON. M. C. MATTHEWS, Judge.

FRIDAY, JANUARY 14, 1910.

ACTION at law to recover damages for personal injuries received by plaintiff, resulting from his being struck by an engine on one of defendant's tracks in the city of Dubuque. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Woodward & Lees* and *J. W. Kintzinger*, for appellant.

*D. E. Maguire* and *T. J. Fitzpatrick*, for appellee.

DEEMER, C. J.—Defendant maintains a switchyard in the city of Dubuque, upon which there are three tracks running lengthwise thereof. These tracks run in an easterly direction, branching off from defendant's main line, which runs substantially north and south. The northerly switch track is called the house track, and just north of this track

was the defendant's freight depot.    Cars were set in upon
the house track to be loaded and unloaded into and from
the freighthouse.    South of the south switch track is what is
known as the Dubuque Boat Works.    In order that travel-
ers might reach these works and other industries south of
the yards defendant had constructed a plank crossing across
the three switch tracks, which crossing was from fifteen
to twenty-five feet west of the west end of the freighthouse.
This crossing was made of planks three inches or more in
thickness and sixteen feet long, laid lengthwise and parallel
with the rails of the tracks.    The planks were laid upon the
railway ties, and the west ends thereof were sawed square
across, so that when put in place the tops were about three
and one-half inches above the surface of the ties.    The ends
were not beveled off, and at some places they were warped
so that they were more than four inches above the surface
of the ground.    There was no filling of dirt, cinders, or
other material at the west end of the planks.    The cross-
ing had been in this condition for a considerable length
of time.

On November 26, 1906, plaintiff was employed by de-
fendant as a night switchman to work in its Dubuque
yards.    His hours were from six-thirty or seven p. m. until
five or six a. m.    His duties were to couple and uncouple
cars, and to see that they were transferred and distributed
to the proper tracks.    In the performance of his duties he
was compelled to get on and off moving engines.    The
engine with which he generally worked was equipped as a
switch engine, with a headlight and a foot or running
board at either end.    Prior to December 10, 1906, plaintiff
says that he had no knowledge of the construction of the
crossing at the place in question, and did not know that the
boards were unbeveled, or that they stuck up, as hereto-
fore indicated.    The night of December 10th was dark,
and on that night he was ordered to go down on the house
track with the switch engine and get a car which was to

be taken out and sent to East Dubuque in Illinois. This car was a little east of the crossing in question. Pursuant to orders, the switch engine backed out to the house track, and plaintiff got upon the rear footboard. When he reached what he thought was a proper place, plaintiff gave the engineer a slow signal. The engineer responded, and slowed the engine down until it was running at the speed of about one and one-half or two miles per hour. When at a point perhaps one and one-half or two feet from the west end of the planks making the crossing, plaintiff attempted to get off the footboard of the engine to go ahead to see if the couplers were properly arranged on both the engine and the car just ahead, so that a coupling would be effected, and as he stepped off his toe struck and caught against the west end of one of the crossing planks, and before he could extricate himself, one foot was caught by the footboard of the engine, throwing him violently forward. He then hallooed to the engineer to stop, but before he did so plaintiff's other foot was caught, and he received the injuries of which he complains. After plaintiff hallooed the engine ran about two feet. Plaintiff stepped off the footboard directly in front of the moving engine, and he claims that this was the usual, common, and customary method of doing the work, both in the defendant's yards and in the yards of other railway companies. The testimony also shows that the customary method of putting in crossings such as the one complained of is to bevel off and taper the ends of the planks. There was testimony tending to show that the headlight on the switch engine did not throw any light on the track within a distance of from forty to fifty feet from the engine. This is a statement of the case largely from plaintiff's standpoint, and the negligence charged is the faulty construction of the crossing and the fact that the ends of the planks were not beveled or tapered off, and that there was no filling in at the ends of the plank. Defendant denies any negligence on its part,

pleaded contributory negligence, and assumption of the risk by plaintiff, and also pleaded that he was a member of defendant's relief department, and, after receiving his injuries, claimed and accepted the benefits promised him, thus relieving defendant from further responsibility. Stated in another form, this last plea is what defendant calls an accord and satisfaction. The trial resulted in a judgment for plaintiff in the sum of $1,000. Many points are relied upon for a reversal of the judgment, to the more important of which we shall direct our attention.

I. A railway company is bound to use ordinary and reasonable care in keeping and maintaining its switchyards and depot grounds in a reasonably safe condition for its employees who are required to pass over and use the same in the progress of their work. Thus it has been held negligent in failing to fill in the spaces between ties. *Tibbits v. Railroad,* 138 Iowa, 178; *Railroad Co. v. Robbins,* 57 Ark. 377 (21 S. W. 886); *Fish v. R. R. Co.,* 96 Iowa, 702; *Railway Company v. Cozby,* 174 Ill. 109 (50 N. E. 1011); *Balt. Co. v. Clifford,* 99 Ill. App. 381; *Roenfranz v. Railroad,* 140 Iowa, 33. It has also been held liable for dangerous accumulations of snow and ice (*Sankey v. Railroad,* 118 Iowa, 39), and for defective cattle guards (*Ford v. Railroad,* 91 Iowa, 179); also for dangerous obstructions in its yards, as a bar of iron (*Railroad Co. v. Jackson,* 106 Tenn. 438, 61 S. W. 771); an oil box (*Railroad Co. v. Bouldin,* 121 Ala. 197, 25 South. 903); a ditch from four to six inches deep across the track (*Hollenbeck v. Railroad,* 141 Mo. 97, 38 S. W. 723, 41 S. W. 887); a pile of gravel (*Hurst v. R. R. Co.,* 163 Mo. 309, 63 S. W. 695, 85 Am. St. Rep. 539); a dangerous platform used for weighing cars (*Rome R. R. v. Thompson,* 101 Ga. 26, 28 S. E. 429). See, also, *Chittick v. Railroad,* 88 Minn. 11 (92 N. W. 462); *Gillespie v. Railroad,* 150 Mich. 303 (113 N. W. 1116). We are constrained to hold that a jury was

*1. RAILROADS: crossings: negligence: injury to switchman.*

justified in finding defendant negligent in constructing and maintaining the crossing in the manner shown by the evidence.

II.   Assuming that defendant was negligent in constructing and maintaining the crossing as it did, the risk incident to the use thereof was not an ordinary one which plaintiff is held to have assumed in the doing of his work as a switchman.   He might, of course, have assumed the risk incident to the use of the defective crossing had it been shown that he knew of the defect and of the dangers incident to working thereover, and continued in defendant's employ without protest and promise of repair.   But the testimony is not such as to justify us in holding, as a matter of law, that he had this notice or knowledge.   The question was for the jury under proper instructions; and, as no complaint is made of those covering this subject, we can not interfere.

2. SAME: assumption of risk.

III.   Plaintiff stepped off ahead of the moving engine between the rails, and, as he said, almost instantly caught his toe and fell, receiving the injuries of which he complains.   In order to meet the charge of contributory negligence he was permitted to show, over defendant's objections, that it was customary to get on and off the front of an engine between the rails in railroad yards of the size of these of defendant in Dubuque.   Complaint is made of the introduction of this testimony, and it is also argued that in stepping off the moving car between the rails in the manner shown in this case plaintiff was guilty of contributory negligence as a matter of law, and that the jury should have been so instructed.   Nothing is much more unsettled than the admissibility of testimony as to the usual and customary method of doing things where negligence or contributory negligence is involved.   It is practically the universal rule that custom or usage will not justify a negligent act.   And it is gen-

3. NEGLIGENCE: evidence of custom.

erally held that evidence as to custom is inadmissible to show negligence.  See *Eppendorf v. R. R. Co.*, 69 N. Y. 195 (25 Am. Rep. 171); *Thompson v. Railroad*, 153 Mass. 391 (26 N. E. 1070); *Cleveland Co. v. Newell*, 75 Ind. 542; *Peoria Co. v. Clayberg*, 107 Ill. 644.  But the absence of the usual and customary precautions may sometimes be shown as bearing upon the issue of negligence or contributory negligence.  See *McGrath v. Railroad*, 63 N. Y. 522; *Coates v. Railroad*, 62 Iowa, 486, *McKean v. Railroad*, 55 Iowa, 192.  Our rule seems to be that if the act done is not negligent *per se*—that is to say, if the act is not so obviously dangerous as to constitute negligence as a matter of law—testimony as to the usual and customary method of doing the act is admissible.  *Jeffrey v. R. R. Co.*, 56 Iowa, 548; *Whitsett v. R. R. Co.*, 67 Iowa, 150; *Miller v. Railroad*, 89 Iowa, 571.

In the latter case it is said: "The plaintiff introduced a witness who testified that it was usual and customary for brakemen, in going over the tender, to step on the lid of the manhole.  We do not understand counsel to object to this line of evidence.  It was surely proper for the plaintiff to show that he was in the line of his duty when he received the injury, and that he pursued the course usually adopted by men in that employment under similar circumstances.  *Jeffrey v. K. & D. M. Railway Co.*, 56 Iowa, 546; *Whitsett v. Chicago, R. I. & P. Railway Co.*, 67 Iowa, 150."  See, also, *Jochem v. Robinson*, 72 Wis. 199; *Waters v. Moss*, 12 Cal. 535 (73 Am. Dec. 561); *Houston R. R. v. Cowser*, 57 Tex. 293; *Nelson v. So. Pac. Co.*, 18 Utah, 244 (55 Pac. 364); *Maynard v. Bruck*, 100 Mass. 40; *Koltsi v. Railroad*, 32 Minn. 133 (19 N. W. 655); *Cass v. R. R. Co.*, 14 Allen (Mass.) 448; *Fuller v. Railroad*, 21 Conn. 557; *Keating v. Railroad*, 49 N. Y. 673, affirming 3 Lans. 469; *Railroad Co. v. Carpenter*, 56 Fed. 451 (5 C. C. A. 551); *Prosser v. Railroad*, 17 Mont. 372 (43 Pac. 81, 30 L. R. A. 814).

We have then to determine judicially whether or not plaintiff's act in stepping off in front of the moving engine and between the rails was negligence *per se*. If it was, then testimony as to custom should not have been received, and there should have been a directed verdict for defendant. Whether or not one is guilty of such negligence as defeats his recovery is ordinarily a question of fact for a jury, depending upon the facts and circumstances of each particular case. In some cases it has been held negligence as a matter of law for one to step in front of a moving car or engine. See *Ferguson v. Railroad,* 100 Iowa, 733; *Cowles v. Railroad,* 102 Iowa, 507. In the latter case plaintiff knew of the exact defect, and voluntarily exposed himself to the danger. In the former plaintiff's duty did not call for his presence on the forward footboard, and he voluntarily chose a dangerous course, where a perfectly safe one was at hand. Here it was the duty of plaintiff to go between the rails at some time while the engine was in motion to see that the couplers were properly arranged. The engine was moving about half as fast as a man would ordinarily walk. It was close upon the car to which it was to be coupled; and, if the place had been safe, plaintiff would undoubtedly have reached the car and performed his duties without harm. While the case is a very close one upon this proposition, it is one where reasonable minds might honestly differ, and in such cases the question is for a jury under proper instructions. The case in this respect is much like *Kroener v. Railroad,* 88 Iowa, 16. See, also, *Whitsett v. Railroad, supra.* From this conclusion it follows that the testimony was properly received, and that the court did not err in submitting the matter to the jury. It should be said in this connection that defendant had no rules forbidding employees from getting off moving engines between the rails. Moreover, the crossing planks extended for the full width of the footboard outside the rails, and the injury was quite as likely

to happen had plaintiff stepped from the footboard outside the rails. *Tibbitts v. R. R. Co., supra,* lends support to our conclusion on this branch of the case. See, also, *De Cair v. Railroad,* 133 Mich. 578 (95 N. W. 726); *Sankey v. Railroad,* 118 Iowa, 39; *Gillespie v. Railroad, supra; Chittick v. Railroad,* 88 Minn. 11 (92 N. W. 462).

IV.   Plaintiff was a member of defendant's relief department, and after his accident he received from said department benefits promised and provided thereby. These facts are relied upon as a complete defense to the action. Section 2071 of the Code, as amended by Acts 27th General Assembly, chapter 49, provides that no such contract or benefit, and no acceptance of the benefits provided, shall constitute a defense to an action brought under the section. This act was held constitutional in *McGuire v. Railroad,* 131 Iowa, 340. Defendant says, however, that plaintiff made his contract for benefits in the state of Illinois, and received his benefits in either Wisconsin or Illinois, and that as the contract and settlement were good in each of these states, they should be so treated here, and that plaintiff should not be permitted to recover. It is true that plaintiff became a member of the relief department and made his contract in the state of Illinois, and that he received his benefits in a state where such settlement or contract would be good. But it does not follow that this will bar him of relief. In such matters the law of the forum must be looked to. Contracts and releases made in a foreign jurisdiction are recognized and enforced out of comity, and not as a matter of right. The general rule in all actions for tort is that the *lex loci delicti* governs the right of the injured party to sue, the liability of the perpetrator, and the defenses which he may plead. See Minor on Conflict of Laws, section 196, and cases cited. Of course even here the action will not lie if contrary to the law or pronounced policy of the forum. *Herrick v. Railroad,* 31 Minn. 11

4. RAILROADS: personal injuries: contracts for benefits: enforcement.

(16 N. W. 413, 47 Am. Rep. 771); *Romano v. Brick Co.,*
125 Iowa, 591 (101 N. W. 437, 68 L. R. A. 132, 106
Am. St. Rep. 323); *Railroad Co. v. McMullen,* 117 Ind.
439 (20 N. E. 287, 10 Am. St. Rep. 67); *Morris v. Rail-
road,* 65 Iowa, 727 (23 N. W. 143, 54 Am. Rep. 39);
*Nelson v. Railroad,* 88 Va. 971 (14 S. E. 839, 15 L. R.
A. 583); *Huntington v. Attrill,* 146 U. S. 670 (13 Sup,
Ct. 224, 36 L. Ed. 1123); *Machado v. Fontes,* 2 L. R. Q.
B. D. 231; *Hamilton v. Railroad,* 39 Kan. 56 (18 Pac.
57); *Brewster v. Railroad,* 114 Iowa, 144. The injury oc-
curred in this state, and under the rule just stated the law
of this state controls.

Moreover, the general rule is that contracts, although
legal where made, will not be enforced in a sister state if
contrary to public policy or against positive statutory enact-
ment. *Davis v. Bronson,* 6 Iowa, 410; *Reynolds v. Nich-
ols,* 12 Iowa, 398; *Boyce v. Wabash Co.,* 63 Iowa, 70;
*Wind v. Iler,* 93 Iowa, 316; *Miller Co. v. Stevens,* 102
Iowa, 60.

In the *Reynolds* case, *supra,* it was said by Wright,
J.: "So the rule is declared as general that all contracts
or agreements, which have for their object anything which
is repugnant to the general policy of the common law, or
contrary to the provisions of any statute, are void and not
to be enforced." Judge Stockton, in the *Davis* case, *supra,*
said: "The contract must not be opposed to the policy
and institutions of the state where it is sought to be en-
forced. In all such cases the contracts will be held utterly
void, whatever may be their validity in the country where
they are made, as being inconsistent with the duties, the
policy, or the institutions of the state where they are sought
to be enforced." So that whether the action be treated as
a tort or an attempt to enforce a contract, valid where
made, but opposed to the policy of the state as declared
by its legislative body, the rule must be the same, and the
defenses relied upon must be disregarded.

We are asked finally to overrule the *McGuire* case because the statute here considered is unconstitutional and void. This we are not prepared to do. That case is now pending in the Supreme Court of the United States, and until it has spoken and declared the statute unconstitutional, we are content to follow our former holding.

Some other matters are discussed by counsel, but they have been disposed of in what has already been said, or are regarded as unimportant, and are not, for that reason considered.

We have gone over the record with care, and find no prejudicial error. The judgment must therefore be, and it is, *affirmed*.